CALMES, APPELLANT AND CROSS-APPELLEE, *v.* GOODYEAR TIRE & RUBBER COMPANY, APPELLEE AND CROSS-APPELLANT, ET AL.

[Cite as *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470.]

(No. 90–288—Submitted May 7, 1991—Decided August 21, 1991.)

*Contrada & Associates, Charles V. Contrada, John C. Risjord & Associates, P.C.,* and *Randy W. James,* for appellant and cross-appellee.

*Buckingham, Doolittle & Burroughs, Charles E. Pierson* and *David P. Bertsch,* for appellee and cross-appellant.

WRIGHT, J. Calmes appeals to this court the reversal of the punitive damage award and the failure to award him compensatory damages from

Goodyear reflecting fault assigned to Pettibone on the basis of joint and several liability. On cross-appeal, Goodyear asserts that product misuse is a complete defense barring any recovery, that the absence of a general verdict bars the entry of judgment on inconsistent jury interrogatory answers, and that a new trial is warranted due to trial misconduct by Calmes's counsel.

## I

We will first address the propriety of the punitive damages award. The court of appeals reversed the jury's award of punitive damages on the grounds that a valid claim for punitive damages was not established. For the reasons that follow, we agree with the court of appeals and affirm its judgment in that respect.

Punitive damages in this state are available upon a finding of actual malice.[1] "Actual malice" for these purposes is "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis *sic.*) *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus.

In *Preston* we arrived at the second standard for an award of punitive damages after a thoughtful review of the circumstances for which, and standards under which, punitive damages have been awarded in the past. Specifically, we held there, and hold here, that punitive damages are intended to punish and deter conduct resulting from a mental state so callous in its disregard for the rights and safety of others that society deems it intolerable. This mental state is the component of the standard contained in the phrase "conscious disregard for the rights and safety of other persons * * *." *Id.* at 335, 512 N.E.2d at 1176.

In addition to defining the requisite mental state, *Preston* also held that misconduct greater than mere negligence is required. This component is expressed in the language "great probability of causing substantial harm," which replaced language from earlier cases such as "outrageous," "flagrant," and "criminal." *Id.* at 335–336, 512 N.E.2d at 1176.

On this second criterion the court of appeals ruled for Goodyear: "We agree with Goodyear that the issue [of punitive damages] should not have been submitted to the jury. While there is some evidence of the possibility of harm arising from Goodyear's acts, there is a lack of substantial, competent and

---

1. Actual malice as it pertains to punitive damages is different from actual malice in a defamation case. *Varanese v. Gall* (1988), 35 Ohio St.3d 78, 79–80, 518 N.E.2d 1177, 1180.

credible evidence of a *great probability* of harm." (Emphasis *sic.*) We agree.

There is no doubt of the destructive capacity of the tire rim in question when coupled with significant air pressure. The probability of that destructive force being unleashed, however, simply was not great.

As the court of appeals succinctly noted, the occurrence of this unique accident required the following combination of acts aside from Goodyear's acts:

"1. Calmes failed to heed instructions;

"2. Calmes placed his head in close proximity to the tire cage;

"3. Pettibone provided Calmes with mismatched components;

"4. Pettibone failed to provide Calmes with a remote air chuck;

"5. Calmes inserted the lock ring backwards;

"6. Calmes combined components which were mismatched."

Nevertheless, Calmes asserts that probability should be adjudged on a foreseeability standard. Calmes couches this argument in language from *Leichtamer v. American Motors Corp.* (1981), 67 Ohio St.2d 456, 21 O.O.3d 285, 424 N.E.2d 568.

*Leichtamer* involved a suit against American Motors for an alleged design defect of the Jeep CJ–7. Evidence in that case revealed that American Motors had failed to test the safety of the CJ–7's seemingly protective roll bar in an end-to-end "pitch-over" situation, while advertising the vehicle as intended for off-road use. It turned out the roll bar was mostly decorative and the Leichtamers suffered grievous injuries and their two companions were killed when the CJ–7 in which they were riding pitched over while being used in an intended manner.

Calmes argues that *Leichtamer* stands for the principle that foreseeability stands in place of great probability. However, mere foreseeability cannot be equated with great probability. In the law of negligence, foreseeability is the threshold level of probability at which conduct becomes negligent. Great probability, then, can be likened to high foreseeability. Accordingly, *Leichtamer* is distinguishable on two grounds. First, it was decided prior to *Preston* and was thus decided under a less precise standard for a punitive damages award. Second, *Leichtamer* involved the use of a product in its

intended manner with no apparent outside contributing causes. Here we have a complex set of contributing factors that destroy "great probability."[2]

Because Goodyear's conduct did not create a great probability of substantial harm, we affirm the court of appeals' decision reversing the award of punitive damages.

## II

The other errors alleged in this case, with the exception of trial misconduct, ultimately concern the propriety of the interrogatories submitted to the jury.

## A

Calmes claims that Goodyear should be accountable for Pettibone's share of the apportioned fault under principles of joint and several liability.

We recently explained the application of joint liability and several, or allocated, liability to cases tried under the comparative negligence statute as it stood when this case was tried, former R.C. 2315.19 (138 Ohio Laws, Part I, 594). *Eberly v. A–P Controls, Inc.* (1991), 61 Ohio St.3d 27, 572 N.E.2d 633. *Eberly* made explicit that where a jury finds the plaintiff negligent, only *several* liability lies under former R.C. 2315.19. *Id.* at paragraph three of the syllabus. Consequently, Calmes's claim that joint and several liability applies is not well taken.

*Eberly* exposes another related error in this case that, though not objected to, will be treated as plain error as we treated it in *Eberly*.[3] *Eberly* makes expressly clear that non-parties are not to be included in interrogatories submitted to the jury under former R.C. 2315.19. *Id.* at paragraph two of the syllabus. Accordingly, Pettibone, no longer a party to the action upon submission of the case to the jury, should not have been included in the

---

2. We do not intend to set forth an ironclad rule today barring punitive damages where liability is apportioned or where there is plaintiff negligence. We have not been asked to do so and, while "great probability" will be more difficult to show where there is plaintiff negligence, we are not prepared to say it can never be shown.

3. While plain error is an appropriate basis for reversal in civil cases only upon the rarest of circumstances, we find it applicable to the error in this case. Multiple-tortfeasor cases have been tried in this state and sent to juries through interrogatories that include non-parties in the apportionment of fault. No doubt this practice was in part based upon our tacit approval of the practice in *Cincinnati Riverfront Coliseum, Inc. v. McNulty* (1986), 28 Ohio St.3d 333, 339, 28 OBR 400, 404–405, 504 N.E.2d 415, 420. Consequently, the debate has raged as to whether joint and several or just several liability lies for the fault attributed to a non-party. In *Eberly*, we chose to explain the application of former R.C. 2315.19 in an effort to provide order to the current state of multi-tortfeasor litigation.

interrogatories submitted to the jury apportioning fault. Because we cannot predict how the jury would have assessed fault if Pettibone had been left out of the interrogatories, we must remand this case for a new trial.

## B

Goodyear argues that the jury finding that Calmes "unreasonably mis-use[d]" the rim assembly components bars any recovery by Calmes. Calmes asserts that misuse is a complete defense to a product claim sounding in strict liability, and as to a negligence claim, merely amounts to allocatable plaintiff negligence.

At the outset we note that unreasonable misuse is not a complete defense to a negligence claim. For that matter, although Calmes asserted at one time but did not preserve the argument for appeal, unreasonable misuse is not even a defense to a strict liability claim. As we stated in *Bowling v. Heil Co.* (1987), 31 Ohio St.3d 277, 282, 31 OBR 559, 563, 511 N.E.2d 373, 377, two affirmative defenses exist to a products liability case based upon strict liability in tort: assumption of the risk and unforeseeable misuse of product. "Unforeseeable" and "unreasonable" are not synonyms. Therefore, unreasonable misuse is not a defense to a strict liability defective product claim.

By contrast, reasonableness of conduct is at the heart of a negligence claim. Since the plaintiff's negligence is considered in the allocation of fault under former or current R.C. 2315.19, there is no reason to completely bar a negligence claim due to a finding that the plaintiff unreasonably misused the product. Fortunately, this case is to be remanded for a new trial. On remand we would expect that the trial court would submit a proper interrogatory concerning "unforeseeable" misuse. As for the case before us, however, a finding of unreasonable misuse is not a bar to recovery.

## C

Both of Goodyear's additional attacks on the jury verdict request a new trial. Because disposition of previously discussed error requires a new trial, it is unnecessary for us to reach these other issues. The failure of the jury to return a general verdict warrants comment. Civ.R. 49 explicitly requires juries to return general verdicts whether or not interrogatories are also returned. Both the former and the current versions of R.C. 2315.19(B) also explicitly require a general verdict along with the interrogatories. Accordingly, the trial court erred by not requesting a general verdict of the jury.

For all of the aforementioned reasons, this case is reversed and remanded for a new trial as to liability and damages, excluding any claim for punitive damages.

*Judgment accordingly.*

MOYER, C.J., SWEENEY and H. BROWN, JJ., concur.

HOLMES, J., concurs in part and dissents in part.

DOUGLAS and RESNICK, JJ., dissent.

HOLMES, J., concurring in part and dissenting in part. I concur in the majority opinion affirming the court of appeals' treatment of the punitive damages issue. There was insufficient evidence submitted to the jury for it to have found punitive damages against Goodyear.

Although I concur in the judgment of the majority in its reversal of the court of appeals' opinion regarding compensatory damages and awarding a new trial on both liability and damages, without the possibility of punitive damages, I would go further and enter judgment for Goodyear. Here, the jury specifically found in its answers to the interrogatories in favor of Goodyear on the affirmative defense of product misuse. Product misuse should be a bar to plaintiff's claim of negligence as well as strict liability. Product misuse is a use of the product which is neither intended nor reasonably foreseeable. See Prosser & Keeton, The Law of Torts (5 Ed.1984) 710, Section 102. A product manufacturer cannot be held liable in negligence for failure to design or warn against misuse of its product which is not reasonably foreseeable. An unreasonable misuse is certainly not to be reasonably foreseen. It is not reasonably foreseeable that a product will be unreasonably misused.

However we linguistically phrase the use of the product involved in this case, it was not the use either intended or foreseen by the manufacturer. It was the extraordinary combination of errors—the wrong-sized side ring of another manufacturer and a backward lock ring—which caused plaintiff's accident. In essence, the different dimensions of the mismatched side ring created a dangerous interference with the backward lock ring which prevented it from popping off until the assembly had reached explosive pressures.

Thus, the jury was more than justified in finding plaintiff's misassembly of the rim constituted product misuse, where the evidence established that Goodyear neither intended nor reasonably could have foreseen that the rim would be misassembled out of mismatched parts with the lock ring on

backwards, let alone that this particular combination of assembly errors created a dangerous condition, where neither error did so separately.

The majority points out that the jury was not asked by interrogatory if product misuse was a proximate cause of plaintiff's injuries. Such an interrogatory would have been superfluous under the admitted facts. There never was any question that plaintiff's misassembly of the rim contributed to the accident. All parties were in agreement that the extraordinary combination of installation errors by plaintiff—the backward lock ring *and* the mismatched side ring—was a primary cause of this accident. The issue for the jury to decide was whether plaintiff's misassembly, which admittedly caused the accident, constituted product misuse and the jury specifically so found.

Moreover, even assuming there should have been a specific jury interrogatory as to whether the product misuse was a proximate cause of the accident, plaintiff waived any such error. Plaintiff never raised any question or objection to the absence of such an interrogatory during trial or on appeal.

In conclusion, the specific jury finding of product misuse was a complete bar to the claims of negligence as well as strict liability and it was prejudicial error not to enter final judgment on all counts in favor of Goodyear. Although I would prefer entering final judgment for Goodyear on all counts, I nonetheless join the majority in remanding this action, excluding any claim for punitive damages.

DOUGLAS, J., dissenting. The trial court properly submitted this case to the jury pursuant to former R.C. 2315.19. As soon as the jury found plaintiff negligent, then it was proper for the jury to be required to answer interrogatories in accordance with R.C. 2315.19(B). The trial court should not, however, have submitted to the jury the question as to Pettibone's negligence. Pettibone was no longer a party and R.C. 2315.19(B)(2) provided for a determination of the negligence " * * * attributable to each *party to the action.*" (Emphasis added.) The trial judge, in this regard, should have, at this point in the proceedings, required Goodyear to avail itself (if it chose to do so) of R.C. 2307.31 and/or 2307.32. See *Eberly v. A–P Controls, Inc.* (1991), 61 Ohio St.3d 27, 37–39, 572 N.E.2d 633, 640–642 (Douglas, J., concurring in part and dissenting in part). The trial judge also properly applied R.C. 2315.19(C).

Given the confusion in the law, the difficulty of interpreting the statutes and the need to reach a conclusion (and one that was just and equitable), it is my judgment that the trial judge did a remarkable job. The judge heard, and the record is replete with, evidence to require the submission of the question of punitive damages to the jury. The majority opinion conveniently does not mention the prior knowledge by Goodyear and the prior cases against Good-

year as to the propensity for injury caused by this product. Given the record in this case and our various tests for allowing the assessment of punitive damages, the trial judge was well within his right in submitting the issue to the jury and the jury did not act improperly in finding that an award of punitive damages should be made.

Accordingly, the trial judge was absolutely correct in entering judgment against Goodyear, upon the jury's verdict, for $1,000,000 in punitive damages. Further, the trial judge was correct in entering judgment against Goodyear for fifty-three percent of the compensatory damage verdict of $1,100,000 ($583,000),[4] given the finding by the jury of Pettibone's negligence of thirty-seven percent (even though the proper method to determine Pettibone's negligence was not used) and the finding of plaintiff's negligence of ten percent. While the result in this case may have been different had the statutes been properly applied in all respects, this should not be cause for a new trial of the entire case. Given the luxury of time to review that we as appellate judges have as opposed to the trial judge who had to make the call just before and during trial, it is time enough to fully apply the statutes in future cases. But for the trial judge's efforts in this case, we would not be in a position to make a comprehensive review.

Thus, I would reverse the court of appeals on the appeal before us and I would affirm the court of appeals on the cross-appeal now before us. I would reinstate the judgment of the trial court in all respects. Because the majority opinion does not reach the same conclusion, I respectfully dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.

---

4. Pursuant to former R.C. 2315.19(A)(2), Goodyear's liability was several, given a finding of plaintiff negligence.