**HOWARD et al., Appellants,**

v.

**COLUMBUS PRODUCTS COMPANY, Appellee, et al.**

[Cite as *Howard v. Columbus Prod. Co.* (1992), 82 Ohio App.3d 129.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1194.

Decided Aug. 27, 1992.

130

*Daniel J. Igoe,* for appellants.

*Baran, Piper, Tarkowsky & Fitzgerald Co., L.P.A., John Tarkowsky* and *Edward C. Baran,* for appellee, Columbus Products Company, Inc.

PETREE, Judge.

Plaintiff, George Howard, appeals from a judgment of the Franklin County Court of Common Pleas granting defendant's motion for a directed verdict at the close of plaintiff's opening statement. In this appeal, plaintiff maintains that the facts alleged in his opening statement adequately state a cause of action for intentional tort against his employer, Columbus Products Company. Because plaintiff has alleged facts which, construed most strongly in his favor, could lead reasonable minds to conclude that defendant knew an injury was substantially certain to occur following its installation of a plastic water meter in a sulfuric acid supply line, we reverse and remand for further proceedings.

For thirty-two years plaintiff was employed by defendant as an industrial chemist in an appliance manufacturing plant. One of plaintiff's responsibilities was to maintain the "pickle machine." In this machine, metal components were dipped into a diluted sulfuric acid solution in preparation for painting. It was plaintiff's job to periodically test the solution and to add the correct amount of sulfuric acid when necessary. Plaintiff typically performed this task once at 5:00 or 5:15 a.m. and later at 10:15 or 10:30 a.m. After the tests were performed, concentrated sulfuric acid was drawn from a central tank until the solution in the pickle machine reached the correct concentration.

During the years 1984 and 1985, defendant's plant underwent a substantial renovation. One aspect of the project involved the installation of a new sulfuric acid storage tank and approximately three hundred feet of plastic supply piping. For the first time, defendant also planned to install a meter in the supply line. In conjunction with a nearby electrical switch, which controlled a pump, the meter was intended to simplify the task of adding sulfuric acid to the pickle machine. With the aid of the meter, the operator could now add a precise amount of acid to the machine.

The new meter was installed by defendant's maintenance staff on the morning of the March 27, 1985. Although the employee installing the meter planned to thoroughly test the device, he did not do so that morning. At approximately 10:30 a.m., plaintiff went about his usual task of testing the solution in the pickle machine. As the acid concentration was a little low, plaintiff went to where the new meter was located and activated the pump control switch. When the now pressurized sulfuric acid reached the meter, it exploded, drenching plaintiff with concentrated sulfuric acid. As a direct result, plaintiff sustained severe and debilitating injuries, which ultimately forced his retirement from the company.

On March 26, 1987, plaintiff filed a ten-count complaint, naming multiple defendants. By the time the case went to trial, nine of the ten counts and all but one defendant had been dismissed from the case. In the one remaining count, plaintiff alleged that defendant had "intentionally violated specific health or safety regulations by installing a meter unfit for its intended use in a sulfuric acid line on or about March 27, 1985." [1] Despite the unartful drafting, the parties have consistently treated this claim as one for intentional tort. The case went to trial on August 27, 1991. As the parties stipulated that defendant was a complying employer for purposes of the Ohio workers' compensation law, the only issue for trial was whether defendant had committed an intentional tort for which it would not be immune under the Workers' Compensation Act.

In his opening statement, plaintiff's counsel alleged that defendant knew to a substantial certainty that installation of a water meter in the sulfuric acid

---

**1.** Such a claim plainly fails to satisfy the heightened pleading requirements imposed by *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 532 N.E.2d 753. Under this rule, the complaint must allege *facts* showing the employer either (1) specifically desired to injure the employee, or (2) knew that such an injury was substantially certain to occur. Although plaintiff's complaint fails to set forth facts supporting either of these propositions, the trial court repeatedly refused to dismiss the case upon this basis. However, as defendant has asserted neither a cross-appeal nor an assignment of error with respect to these rulings, the matter is now waived. Accordingly, we will review the sufficiency of the facts set forth in plaintiff's opening statement, even though the complaint is insufficient under *Mitchell.*

supply line would result in injury to one of its employees. Plaintiff explained that defendant's maintenance supervisor, Jerry Kennedy, called an equipment supplier and asked for a meter suitable for use with sulfuric acid. When he was told that the supplier had no such meter, Kennedy allegedly said that he had been mistaken and that the meter was only for use with rinse water. The supplier said that he had a meter appropriate for this purpose, but warned Kennedy that the meter was not intended for use with sulfuric acid. Because Kennedy needed the meter urgently, the equipment supplier removed a water meter he was using in his own home and shipped it to Kennedy, who had it installed in the supply line.

At the close of plaintiff's opening statement, defendant moved for a directed verdict. Relying in large part on *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 575 N.E.2d 416, the trial court granted the motion. From that judgment, plaintiff brought this timely appeal, asserting a single assignment of error:

"The court erred, as a matter of law, in granting the defendant's motion for a directed verdict at the close of the plaintiff's opening statement."

Under Civ.R. 50(A)(1), a motion for directed verdict may be made on the opening statement of an opponent. However, the Supreme Court has ruled that great caution must be exercised when reviewing such a motion. *Brinkmoeller v. Wilson* (1975), 41 Ohio St.2d 223, 70 O.O.2d 424, 325 N.E.2d 233. An opening statement is merely a summary of what a party expects the evidence will show at trial. It is not necessary that a party replead every element of the case. *Cianci v. Rocky River* (Mar. 5, 1987), Cuyahoga App. No. 51871, unreported, 1987 WL 7446. When a defendant moves for a directed verdict at the close of the plaintiff's opening statement, the court should consider the facts presented in both the statement and the complaint. Furthermore, the party against whom the motion is directed should be given an opportunity to amend or explain his or her remarks. *Archer v. Port Clinton* (1966), 6 Ohio St.2d 74, 76, 35 O.O.2d 88, 90, 215 N.E.2d 707, 709. Because the motion raises a question of law as to the sufficiency of the facts stated in the complaint and opening statement, we apply the same standard as the trial court. Construing the facts in the statement and complaint most strongly for the nonmoving party, a court may grant the motion only where the facts expected to be proved do not constitute a cause of action or a defense. *Brinkmoeller, supra,* at syllabus.

A cause of action brought by an employee for intentional tort requires proof that the employer either specifically desired to injure the employee or knew that injury to the employee was substantially certain to result from the employer's act. *Jones v. VIP Development Co.* (1984), 15 Ohio St.3d 90, 15

OBR 246, 472 N.E.2d 1046, paragraph one of the syllabus. In *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, the Supreme Court developed a three-part standard intended to distinguish "intentional" acts from those which are merely negligent or reckless. As modified in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, the test for establishing an intentional tort now requires that the following elements be proved:

" * * * (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Id.* at paragraph one of the syllabus.

In its decision granting the motion for a directed verdict, the trial court placed particular reliance on the Supreme Court's recent decision in *Calmes*, 61 Ohio St.3d 470, 575 N.E.2d 416. In that case, the plaintiff sought punitive damages from Goodyear for the defective design and manufacture of a three-piece tire and rim assembly. Although Goodyear's negligence was a contributing factor, the Supreme Court identified six other acts and omissions aside from Goodyear's own conduct which contributed to the accident. To these facts, the court applied the standard for granting punitive damages: great probability of causing substantial harm. Equating great probability with high foreseeability, the Supreme Court held that the complex set of contributing factors destroyed the great probability of substantial harm necessary to support an award of punitive damages. Finding a similarity between the facts of *Calmes* and this case, the trial court held that the accident which resulted in plaintiff's injury was not substantially certain to occur because it was caused by a series of separate acts and omissions.

*Calmes* is both factually and legally distinguishable from the case at hand. To begin with, the facts of this case are quite different from those in *Calmes*. Unlike Goodyear, the defendant in this case is responsible for each of the acts and omissions which allegedly contributed to the accident. In addition to the factual dissimilarity, *Calmes* is also legally distinguishable from the instant case. *Calmes* applied the standard for granting punitive damages, not the test applicable to intentional-tort claims. The rule applied in *Calmes* is an objective one which depends on the foreseeability or probability of harm in the eyes of a reasonable person. However, because it requires actual knowledge to a substantial certainty, the test applicable to intentional-

tort claims is a subjective one. Under this test, the objective probability of the accident is irrelevant, provided the employer knows that an injury is substantially certain to occur.

The correct standard is set forth in *Van Fossen* and *Fyffe*. There must be proof that the employer knew that injury to an employee was substantially certain to result from its conduct, but proceeded despite this knowledge. Under this test, the nature of the employer's knowledge is the vital element. *Van Fossen*, 36 Ohio St.3d at 116, 522 N.E.2d at 504. As in any case where actual knowledge is at issue, the existence of this knowledge may be inferred from the actor's conduct and the surrounding circumstances. *Jones*, 15 Ohio St.3d at 95, 15 OBR at 250, 472 N.E.2d at 1051. The words "substantial certainty" merely describe the character of the required knowledge; they do not constitute a separate element of the test. An employer who acts despite knowledge of a great risk has not acted intentionally under *Van Fossen* and *Fyffe*. Only where the employer acts despite knowledge that an injury is substantially certain to result from a dangerous process, procedure or condition is the employer treated as if it desired the resulting injury.

Plaintiff alleges that defendant's maintenance supervisor, Jerry Kennedy, was expressly told that the meter he was purchasing was not designed for use with sulfuric acid. Because Kennedy had originally asked for a meter suitable for use with sulfuric acid, it may be reasonably inferred that Kennedy knew that the meter would be installed in the sulfuric acid supply line. Given his position as maintenance supervisor, it may also be inferred that Kennedy was familiar with the high risk concentrated sulfuric acid posed to any employee exposed to it. From these facts and inferences, a jury could conclude that Kennedy knew that the installation of an ordinary plastic water meter in a pressurized sulfuric acid supply line would almost certainly result in a catastrophic failure which would pose a threat of serious harm to anyone in the vicinity when the failure occurred.

This is the essence of an intentional tort claim. Where an employer is expressly warned that a device is unsuitable for its intended use in a process or system which is already known to be dangerous, and the employer installs the device despite this knowledge, the employer may be treated as if it desired the harm which results from its conduct. Such a showing satisfies the first two prongs of the *Fyffe* test. While defendant apparently intended to test the meter, it took no steps to prevent plaintiff from using the meter during the course of his normal duties at the plant. When an employee is subjected to a dangerous condition while performing his or her normal duties, and the employer has taken no steps to prevent the employee from being

exposed to the dangerous condition, this satisfies the third prong of the *Fyffe* test.

Our review of the record in this case was limited to an examination of the facts alleged in the complaint and stated during opening statement. In performing our review, we must assume that testimony will be introduced supporting each of these facts and we must draw every reasonable inference which this testimony might conceivably support. Needless to say, this is a very strict standard of review. Even a motion for summary judgment would allow a more extensive review of the evidence, yet it would be reviewed under essentially the same standard of review we apply today. Thus, it is the rare case which will survive a motion for summary judgment only to succumb to a motion for directed verdict on opening statement. For this reason, a directed verdict should be granted on opening statement only with great caution and only in those cases where a party completely fails to propose relevant evidence on an essential element of that party's case.

Given this rather strict standard of review, our judgment in this case might have been very different had the case proceeded past plaintiff's opening statement. It may very well be that plaintiff cannot produce testimony which will support the necessary inferences. But based solely on the complaint and opening statement, we cannot say that these facts will never make out a cause of action for intentional tort. Because plaintiff has alleged facts which, construed most strongly in his favor, could convince reasonable minds that defendant knew that an injury was substantially certain to result from its conduct, the trial court erred in granting the motion for a directed verdict.

The assignment of error is sustained and the judgment of the trial court is reversed. The cause is remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

Peggy Bryant and Strausbaugh, JJ., concur.

Dean Strausbaugh, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.