[Cite as *Massie v. White*, 2019-Ohio-811.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| MICHAEL MASSIE | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2018-CA-17 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-092 |
| | : | |
| ANDREW T. WHITE, ATTORNEY AT LAW, et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of March, 2019.

. . . . . . . . . . .

F. HARRISON GREEN, Atty. Reg. No. 0039234, 4015 Executive Park Drive, Suite 230, Cincinnati, Ohio 45241
        Attorney for Plaintiff-Appellant

NEIL F. FREUND, Atty. Reg. No. 0012183 and LINDSAY M. JOHNSON, Atty. Reg. No. 0077753, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
        Attorneys for Defendants-Appellees

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Plaintiff-appellant Michael Massie appeals a judgment of the Miami County Court of Common Pleas, General Division, granting defendant-appellee Andrew T. White's motion for summary judgment. Massie filed a timely notice of appeal with this Court on August 16, 2018.

{¶ 2} Michael and Sharon Massie married on July 16, 1983. Approximately 31 years later, in February 2015, Sharon filed a complaint for divorce against Michael in the Miami County Court of Common Pleas, Domestic Relations Division. Shortly thereafter, Michael filed a counterclaim for divorce.[1] At the time of the parties' divorce, they were co-owners of a tree-trimming business; the business and the marital residence were located on the same property. Both parties were represented by counsel throughout the divorce proceedings. Michael was represented by attorney Andrew T. White, while Sharon was represented by attorney Timothy Sell.

{¶ 3} During 2015 and early 2016, the parties, through counsel, attempted to negotiate a divorce settlement. Michael admitted in his deposition for the instant case that he preferred to negotiate a settlement agreement with Sharon rather than go to trial. Michael also admitted that early attempts to settle the divorce included a provision requiring him to refinance the marital residence, but he was unable to do so because of poor credit. Additionally, Michael offered to pay Sharon approximately $50,000 in lump sum cash payments, but she declined the offer. We further note that Michael agreed to pay Sharon $850 per month in temporary spousal support while the divorce action was

---

[1] At the time the parties filed for divorce, all children born during the marriage had become emancipated and therefore had no bearing on the proceedings.

pending.

{¶ 4} The final divorce hearing was held on January 25, 2016. Massie testified that he was aware that his attorney was working with Sharon's attorney to settle the case during the weekend prior to the hearing. The record establishes that the parties were able to reach a settlement agreement prior to the divorce hearing. As part of the agreement, Michael was able to retain the marital residence free and clear of any claim from Sharon. Per the agreement, Michael was also not required to pay Sharon approximately $15,000 in marital equity on the property to which she was otherwise entitled. Michael was granted complete ownership of the tree trimming business and was not required to pay Sharon any equity. Michael was required to pay Sharon spousal support in the amount of $600 per month for the first year and $1,000 per month for nine additional years.

{¶ 5} When questioned by the magistrate at the hearing regarding the terms of the divorce settlement, Michael stated on the record that he had had a chance to discuss the settlement with his attorney, acknowledging that his attorney answered all of his questions. Divorce Tr. 17-18. Michael also informed the magistrate that he did not need to take a break in order to further discuss the terms of the settlement with his attorney. *Id.* When asked if he was satisfied with his counsel's representation, Michael stated that he did not have any issues to bring to the magistrate's attention. *Id.* Finally, when the magistrate asked him if he thought the terms of the settlement agreement were "fair and equitable," Michael answered, "Yes, I do." *Id.*

{¶ 6} At the settlement hearing, the following exchange occurred:

The Magistrate: Do you think you've had enough information from Sharon

Massie to make decisions as a reasonable and prudent person would need?

Michael Massie: Yes.

Q: Do you think you've given her enough information so that she can similarly make decisions?

A: Yes.

Q: Do you understand that the Court does not retain jurisdiction to modify this agreement except as the two of you either have agreed in the document or might agree to in the future?

A: Yes.

Q: Is this your agreement?

A: Yes.

Q: *This is what you want to do?*

A: *Yes.*

Q: *Has anyone forced you, threatened you or coerced you in any way to agree?*

A: *No.*

Q: *Has anyone promised you anything to get you to agree?*

A: *No.*

Q: *Are you asking the Court to grant you a divorce on the grounds of incompatibility?*

A: *Correct.*

Q: *And adopt the agreement as terms of that divorce?*

A: *Correct.*

(Emphasis added.) *Id.* at 18-20. Shortly thereafter, the parties' Final Decree of Divorce incorporating the terms of the settlement agreement was approved by the trial court and filed.

{¶ 7} Approximately one year later on February 23, 2017, Michael filed a legal malpractice claim against his former counsel, Andrew White, requesting compensatory, special, and punitive damages. In his complaint, Michael asserted that White had entered into the divorce settlement agreement without Michael's consent. Michael argued that he instructed White to offer Sharon spousal support in the amount of $500 per month for ten years. Michael asserted that he never agreed to pay Sharon spousal support of $1,000 for nine years. Michael further asserted that he suffered damages because he cannot afford to pay Sharon $1,000 per month in spousal support.

{¶ 8} On March 6, 2018, White filed a motion for summary judgment arguing that Michael had failed to set forth any facts, beyond bare speculation, supporting the allegations in his complaint that, if he had taken the case to trial, he would have received a better result. Attorney White also argued that Michael failed to set forth any facts establishing that White acted with ill-will or hatred when he represented Michael as to support a claim for punitive damages. Michael filed a response to White's motion for summary judgment, and White filed a reply to Michael's responsive brief.

{¶ 9} On July 18, 2018, the trial court issued a decision granting White's motion for summary judgment. Specifically, the trial court found that the instant case fell "squarely within the parameters" of the case-within-a-case doctrine and that Michael had failed to set forth any facts establishing that, if he had taken the case to trial, he would have received a better result. Additionally, the trial court found that Michael set forth no facts,

aside from bare allegations, that would support a claim for punitive damages.

{¶ 10} It is from this judgment that Michael now appeals.

{¶ 11} Because they are interrelated, all of Michael's assignments of error will be discussed together as follows:

DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEES WHEN GENUINE ISSUES OF MATERIAL EXISTED SHOWING DEFENDANTS-APPELLEES BREACHED THE STANDARD OF CARE?

DID THE TRIAL COURT ERR IN APPLYING THE CASE-WITHIN-A-CASE STANDARD IN THIS LEGAL MALPRACTICE CASE?

DID THE TRIAL COURT ERR IN FINDING THERE EXISTED NO SET OF FACTS THAT GIVE RISE TO AN APPROPRIATE CLAIM FOR PUNITIVE DAMAGES?

{¶ 12} In his first assignment, Michael contends that the trial court erred when it granted White's motion for summary judgment. Specifically, Michael argues that he set forth sufficient evidence of White's deficient representation regarding the acceptance of the settlement agreement to create a genuine issue of material fact with respect to damages. In his second assignment, Michael argues that the trial court misapplied the case-within-a-case doctrine in the instant case because "the merits of the underlying case are not directly at issue." Lastly, in his third assignment, Michael argues that the trial court erred when it found that he had failed to set forth sufficient facts to create a genuine issue with respect to his entitlement to punitive damages based upon White's alleged "conscious and willful disregard of [Michael]'s interest."

**Summary Judgment Standard**

{¶ 13} As this Court has previously noted:

Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, 876 N.E.2d 1217, ¶ 29.   When reviewing a summary judgment, an appellate court conducts a de novo review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 119-20, 413 N.E.2d 1187 (1980).   Therefore, the trial court's decision is not granted deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

* * *

The moving party bears the initial burden to demonstrate the

absence of a genuine issue of material fact for each of the elements of its claim. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988); *Wells Fargo Bank, N.A. v. Goebel*, 2d Dist. Montgomery No. 26244, 2015-Ohio-38 ¶ 16. Only if this burden is met, the non-moving party then has the burden of providing sufficient evidence to prove that there are material issues of fact that are genuinely contested. *Goebel* at ¶ 17. "Throughout, the evidence must be construed in favor of the nonmoving party." *Id.* * * *

*Huntington Natl. Bank v. Payson*, 2d Dist. Montgomery No. 26396, 2015-Ohio-1976, ¶ 14, 16.

{¶ 14} As this Court has further noted, to prevail on a legal malpractice claim, Michael must prove: "(1) that the attorney owed him a duty or obligation, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there was a causal connection between the conduct complained of and the resulting damage or loss. *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997)." *Werts v. Penn*, 164 Ohio App.3d 505, 2005-Ohio-6532, 842 N.E.2d 1102, ¶ 17 (2d Dist.); *see also Berridge v. McNamee*, 2016-Ohio-4716, 66 N.E.3d 1266, ¶ 35 (2d Dist.).

{¶ 15} Further, as this Court has previously noted:

" 'The duty of an attorney to his client is to " * * * exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, and to be ordinarily and reasonably diligent, careful, and prudent in discharging the duties he has assumed." ' " *Yates v. Brown*, 185 Ohio App.3d 742, 2010-Ohio-35, 925 N.E.2d 669, ¶ 17 (9th

Dist.), quoting *Palmer v. Westmeyer*, 48 Ohio App.3d 296, 298, 549 N.E.2d 1202 (6th Dist.1988), quoting 67 Ohio Jurisprudence 3d, Malpractice, Section 9, at 16 (1986). Rule of Professional Conduct 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." * * *

*McCarty v. Pedraza*, 17 N.E.3d 71, 2014-Ohio-3262, ¶ 8 (2d Dist.). As noted by the trial court, there is no dispute that White was representing Michael in the divorce action commenced by Sharon.

{¶ 16} As previously stated, Michael argues that he directed White to limit spousal support for Sharon to $500 per month for ten years. Michael asserts that he never consented to the settlement agreement awarding Sharon spousal support in the amount $1,000 for nine of ten years. Accordingly, Michael contends that he has set forth sufficient facts to create a genuine issue with respect to the deficient performance of White regarding his acceptance of the settlement agreement. However, the only evidence Michael offered in support of his argument were unsupported allegations in his complaint and his own deposition testimony in this case, in which he stated that he wanted to limit the spousal support to $500 per month, not $1,000.

{¶ 17} Upon review, we conclude that Michael failed to set forth any facts, other than his own self-serving deposition testimony, which created a genuine issue of material fact regarding whether White accepted the settlement agreement awarding Sharon spousal support in the amount $1,000 for nine years without Michael's consent. Conversely, the record here establishes that White acted with Michael's approval when he negotiated the settlement agreement. In his deposition in this malpractice case,

Michael testified that he preferred to settle the divorce case rather than proceed to trial, and he understood that White was engaged in ongoing settlement negotiations with opposing counsel up until a day before the final divorce hearing. Michael testified that he participated in phone calls and text messages with White regarding settlement terms only 24 hours before the case was settled. Michael also testified that he preferred to maintain total ownership of the marital residence and tree-trimming business. Michael testified that he understood that keeping the residence and business would require him to pay increased spousal support to Sharon. Finally, Michael testified he was specifically informed by White that White had negotiated a 12-month delay before Michael would be responsible for paying spousal support in the amount of $1,000 per month. White informed Michael that the delay had been negotiated so that Michael could have time to get his finances in order.

{¶ 18} Additionally, Michael testified under oath at the final divorce hearing before the magistrate. Specifically, Michael testified that he heard the agreement read into the record by opposing counsel. Michael testified that he had discussed the settlement agreement with White, who had answered all of his questions. Michael also informed the magistrate that he did not need to take a break in order to further discuss the terms of the settlement with his attorney. When asked if he was satisfied with his counsel's representation, Michael stated that he did not have any issues to bring to the magistrate's attention. When the magistrate asked him if he thought the terms of the settlement agreement were "fair and equitable," Michael answered, "Yes, I do." Lastly, Michael affirmatively stated that he wanted to enter into the settlement agreement and that he had not been coerced or threatened into accepting the agreement.

{¶ 19} We agree with the trial court's finding that Michael failed to set forth any facts that created a genuine issue of material fact regarding deficient performance by White when he negotiated the terms of the settlement agreement. White negotiated a settlement that allowed Michael to maintain complete ownership of the marital residence and tree-trimming business, and to pay reduced spousal support for one year. Under these circumstances, a spousal award of $500 per month may not have been a viable option. Moreover, Michael unequivocally agreed to the terms of the settlement under oath. Absent Michael's unsupported allegations, there are no facts in the record which support his claim.

## Case-Within-a-Case Standard

{¶ 20} Michael next argues that the trial court erred when it applied the case-within-a-case standard, rather than the "some evidence" standard, when it granted White's motion for summary judgment.

{¶ 21} Regarding the applicable legal malpractice causation standard that applies to Michael's claims, this court has distinguished the "some evidence" standard set forth in *Vahila,* 77 Ohio St.3d 421, 674 N.E.2d 1164, from the "case-within-a-case" standard set forth in *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173, as follows:

> The some-evidence standard applies in cases in which a plaintiff's damage or loss has been suffered "regardless of the fact that [the plaintiff] may be unable to prove that [he] would have been successful in the underlying matter(s) in question." *Vahila* at 427, 674 N.E.2d 1164. In such a case, the plaintiff need provide only "some evidence of the merits of the

underlying claim." *Id.* at 428, 674 N.E.2d 1164. In *Vahila*, the plaintiffs sued their attorneys after the attorneys represented them in several civil and criminal matters. The plaintiffs claimed that the attorneys' failure to properly disclose matters related to, and the consequences of, various plea bargains and settlement arrangements resulted in losses of $100,000 and lost profits of at least $200,000. The *Vahila* Court held, "[b]ased on the theory that plaintiffs proposed, * * * that 'given the facts of [the] case, [the plaintiffs] have arguably sustained damage or loss regardless of the fact that they may be unable to prove that they would have been successful in the underlying matter(s).' " *Environmental Network* at ¶ 14, quoting *Id.* at 427, 674 N.E.2d 1164.

In *Environmental Network*, "the [Ohio] Supreme Court focused on the need to link the attorney's action (or inaction) to the adverse result." *Gijbertus D.M. van Sommeren v. Gibson*, 2013-Ohio-2602, 991 N.E.2d 1199, ¶ 30 (6th Dist.). The *Environmental Network* Court said that the case-within-a-case doctrine applies if the theory of the malpractice case places the merits of the underlying litigation directly in issue. *Environmental Network* at ¶ 17-18. In this type of case, said the Court, "it is insufficient for the plaintiff to present simply 'some evidence' of the merits of the underlying claim." *Id.* at ¶ 19; see also *Gijbertus* at ¶ 32 ("After *Environmental Network*, the demonstration of causality in legal malpractice cases requires more than just 'some evidence' to proximately relate the specific act or omission that is held up as the attorney's breach of duty to

the client's damages."). "[T]he plaintiff must establish that he would have been successful in the underlying matter." *Id.* The plaintiffs in *Environmental Network* sued their attorney after the attorney settled the underlying action instead of trying it, claiming that they would have had a better outcome if the matter had gone to trial. Unlike the *Vahila* plaintiffs, said the Court, the plaintiffs in *Environmental Network* "could recover only if they could prove that they would have succeeded in the underlying case and that the judgment would have been better than the terms of the settlement." *Id.* at ¶ 18. The Court concluded that "the theory of this malpractice case places the merits of the underlying litigation directly at issue because it stands to reason that in order to prove causation and damages, appellees must establish that appellant's actions resulted in settling the case for less than appellees would have received had the matter gone to trial." *Id.*

*McCarty v. Pedraza*, 2014-Ohio-3262, 17 N.E.3d 71, ¶ 17-18 (2d Dist.).

**{¶ 22}** In the instant case, Michael argues that the terms of the settlement agreement negotiated by White which required him to pay $1,000 per month for nine years were "inadequate." Nevertheless, Michael admits that he did not want to proceed to trial and attempt to obtain a better result; his argument is only that he did not agree to the final settlement requiring him to pay $1,000 per month in spousal support to Sharon. Thus, Michael argues that the trial court should have applied the "some evidence" standard rather than the case-within-a-case standard. Michael's argument is without merit.

{¶ 23} "When a plaintiff premises a legal-malpractice claim on the theory that he would have received a better outcome if his attorney had tried the underlying matter to conclusion rather than settled it, the plaintiff must establish that he would have prevailed in the underlying matter and that the outcome would have been better than the outcome provided by the settlement." *Environmental Network Corp.* at syllabus. Upon review, we conclude that the trial court's recitation of the evidence and its conclusions about the lack of malpractice were correct. Furthermore, even if we assumed that Michael's claim fit within the less stringent standard in *Vahila*, the fact is that Michael failed to present "some" or even any evidence of the merits of his underlying claim. *See Vahila*, 77 Ohio St.3d at 428, 674 N.E.2d 1164.

{¶ 24} The evidence in the instant case established that the settlement agreement negotiated by White was not only "adequate," but actually favored Michael insofar as he received the marital residence and tree-trimming business free and clear of any claim from Sharon. In his affidavit, Sharon's attorney, Timothy Sell, stated that his client would have proceeded to trial if Michael had not agreed to pay $1,000 per month in spousal support. As previously stated, Michael informed the magistrate at the final divorce hearing that the terms of the settlement agreement were both fair and equitable. Other than mere speculation, Michael did not set forth any evidence that he would have obtained a better result had the matter proceeded to trial. Therefore, the trial court did not err when it applied the case-within-a-case standard in granting White's motion for summary judgment.

## Punitive Damages

{¶ 25} As previously stated, Michael asserts that he instructed White that he only

wanted to pay $500 per month in spousal support to Sharon. Michael argues that White's actions in accepting the settlement agreement requiring him to pay $1,000 per month in spousal support constituted "conscious wrongdoing" and "actual malice." Therefore, Michael contends that a genuine issue existed as to whether he was entitled to punitive damages.

{¶ 26} The intent behind punitive damages is to punish the wrongdoer and to deter intolerable conduct. *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 473, 575 N.E.2d 416 (1991). By statute, a complainant in a tort action may not be awarded punitive damages unless (1) the act or omissions of the defendant demonstrated malice or aggravated or egregious fraud, and (2) the trier of fact awarded the plaintiff compensatory damages. R.C. 2315.21(C); *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, ¶ 12. The burden of proof rests with the plaintiff to establish entitlement to punitive damages by clear and convincing evidence. R .C. 2315.21(D)(4); *Pierson v. Rion*, 2d Dist. Montgomery No. 23498, 2010-Ohio-1793, ¶ 46.

{¶ 27} In awarding summary judgment to White, the trial court found that Michael failed to establish that White acted with actual malice toward him. "Actual malice" in the context of punitive damages has been defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Calmes* at 473, quoting *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987), syllabus. Even construing the facts in favor of Michael, we agree that he failed to show that any conduct exhibited by White even remotely acted to exhibit hatred, ill will, vengefulness, or a conscious disregard for Michael's rights or safety.

*Preston* at syllabus.

{¶ 28} Michael's claim for punitive damages was based upon his claim that he did not consent to a settlement requiring him to pay $1,000 in spousal support for nine years. Michael's claim was completely undermined by the fact that he unequivocally agreed to the terms of the settlement agreement on the record before the magistrate at the final divorce hearing. The record establishes that White provided Michael with detailed spreadsheets setting forth all of the parties' marital assets. Simply put, the record establishes that White acted both competently and diligently when he negotiated the settlement agreement. Accordingly, we conclude that the trial court did not err in granting summary judgment in favor of White on Michael's claim for punitive damages, because there were no genuine issues of material fact regarding that purported claim, and White was therefore entitled to judgment as a matter of law.

{¶ 29} Michael's first, second, and third assignments of error are overruled.

{¶ 30} All of Michael's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies sent to:

F. Harrison Green
Neil F. Freund
Lindsay M. Johnson
Hon. J. Timothy Campbell, Sitting by Assignment