OPINION
Appellants Lawanda and William Burkey appeal the decision of the Tuscarawas County Court of Common Pleas that granted summary judgment on appellants' claims for intentional tort against Appellee Lauren Manufacturing ("Lauren"). Appellants also appeal the trial court's decision that granted summary judgment, on behalf of Appellee/Cross-Appellant Teledyne Farris Engineering ("Appellee Teledyne"), on appellants' product liability claim. Appellee Teledyne filed a cross appeal appealing the trial court's decision to grant dismissal of its claim for contribution against Cross-Appellee Boston Matthews, Inc. ("Boston Matthews"). The following facts give rise to this appeal. On June 8, 1995, the date of the injury, Appellant Lawanda Burkey was employed at Appellee Lauren and assisted the line operator in the set-up of an extrusion line. Part of her duties required her to take extruded material from a rinse tank and hand feed it into a "puller" which then pulled the finished product through the line in a continuous cycle until completion. Because of the high temperature of the material, Appellant Burkey wore thick rubber gloves, while handling the material, to protect her hands from the heat. Appellant Burkey claims the extrusion line that she worked on was unique because it was set up as a left-hand feed operation. According to Appellant Burkey, this fact is significant because the machine was not guarded properly when operated as a left-hand machine. Appellant Burkey's injury occurred while attempting to put product into the puller. The tip of her rubber glove contacted the running belt and pulled her left arm in between the two belts of the puller causing a severe crush injury. Somewhere between 1979 and the early 1980's, Appellee Teledyne manufactured the puller that caused appellant's injury. The puller came equipped with adjustable, removable, vertical guide bars that were located only at the right-hand feed position. If operated from a left-hand feed position, these guide bars would not be in a position to assist the operator. In 1979, Appellee Teledyne designed a guard for this type of puller, but it could only be used from one side of the puller. The guard, made of clear plastic located on the top and front of the puller, covered the incoming side. It incorporated a six-inch wide and five and one-half inch high cut-out at the point of operation. Following the development of this guard, Appellee Teledyne instituted a retrofit program wherein it sent letters to purchasers of the original pullers advising them of the availability of the guard they could purchase. The new guard had to be purchased as either a right-hand or left-hand cover. Appellee Teledyne also mailed warning stickers to be placed at the right-hand feed position. Approximately one year later, Appellee Teledyne modified the guard design to include an identical exit cover, with the same cut-out, which gave the same protection when used as either a left-hand or a right-hand feed. In 1991 or 1992, Cross-Appellee Boston developed a new guard which improved the safety of the machine. However, until 1995, the original guard design was sold to customers. Appellee Lauren purchased the puller in question from Alsop Industrial Services, which is a broker of used manufacturing equipment. At the time Appellee Lauren purchased the machine, there were no guards. Appellee Lauren refurbished the machine by adding two safety features: an emergency stop button in a new location and a new guard on the puller manufactured by Cross-Appellee Boston Matthews. As a result of her injuries, Appellants Lawanda and William Burkey filed a lawsuit on June 7, 1996. Appellants' suit alleged an intentional tort claim against Appellant Lawanda Burkey's employer, Appellee Lauren, for injuries arising out of the alleged intentional tortious actions of Appellee Lauren. Appellants also alleged a product liability claim against Appellee Teledyne as the manufacturer of the machine that caused Appellant Lawanda Burkey's injury. During the course of discovery, appellants determined that Cross-Appellee Boston Matthews sold Appellee Lauren a guard for the machine. Thereafter, appellants filed an amended complaint restating their claims against Appellees Lauren and Teledyne and added a product liability claim against Cross-Appellee Boston. Appellee Teledyne filed a cross-claim against Cross-Appellee Boston Matthews based on the theories of contractual indemnity, common law indemnity, and contribution. Appellee Teledyne also filed a cross-claim against Appellee Lauren on theories of indemnity and contribution. Appellee Lauren filed a cross-claim against Appellee Teledyne and Cross-Appellee Boston Matthews on theories of indemnity and contribution. Prior to the trial of this matter, Appellant Lawanda Burkey settled her claims with Cross-Appellee Boston Matthews. Following this settlement, the trial court dismissed the cross-claims for contribution filed by Appellees Lauren and Teledyne against Boston Matthews. The trial court also dismissed Boston Matthew's cross-claims against Teledyne and Lauren. Teledyne informed the trial court that the dismissal of their claims was improper. The trial court filed a nunc pro tunc judgment entry preserving all the cross-claims dismissed in its prior entry. Boston Matthews filed a motion to dismiss Teledyne's and Lauren's cross-claims. Teledyne filed a motion to dismiss appellants' claims because appellants released Boston Matthews, which Teledyne claimed was the primarily liable party. The trial court denied Teledyne's motion to dismiss and granted Boston Matthew's motion to dismiss. Subsequently, Appellee Teledyne filed a motion for summary judgment based on substantial alteration, component part manufacturer's non-liability, and assumption of the risk. Appellee Lauren also filed a motion for summary judgment on the basis that its conduct did not rise to the level of an intentional tort. The trial court granted both motions for summary judgment. Appellants timely filed their notice of appeal and Appellee Teledyne filed a cross appeal. The parties set forth the following issues for our consideration:
 I. THE TRIAL COURT ERRED IN FINDING THAT REASONABLE MINDS COULD ONLY CONCLUDE THAT APPELLANT-EMPLOYER DID NOT COMMIT AN INTENTIONAL TORT.
 II. THE TRIAL COURT ERRED IN CONCLUDING, AS A MATTER OF LAW, THAT THE PULLER WAS NOT IN SUBSTANTIALLY THE SAME CONDITION FROM THE TIME OF MANUFACTURE TO THE TIME OF INJURY. Cross-Appeal
 I. THE TRIAL COURT ERRED IN FAILING TO DISMISS PLAINTIFFS' PRODUCT LIABILITY CLAIMS AGAINST TELEDYNE WHERE PLAINTIFFS RELEASED THE PRIMARILY LIABLE PARTY AND TELEDYNE IS, AT MOST, ONLY SECONDARILY LIABLE TO PLAINTIFFS.
 II. THE TRIAL COURT ERRED IN DISMISSING TELEDYNE'S INDEMNITY AND CONTRIBUTION CROSS-CLAIMS AGAINST BOSTON MATTHEWS BASED ON PLAINTIFFS' RELEASE OF BOSTON MATTHEWS WHERE THE RELEASE WAS NOT IN GOOD FAITH, AND WHERE TELEDYNE'S INDEMNITY CLAIM IS BASED ON A WRITTEN CONTRACT IN WHICH BOSTON MATTHEWS AGREED TO INDEMNIFY TELEDYNE.
Summary Judgment Standard
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36. As such, we must refer to Civ.R. 56 which provides, in pertinent part: Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421,429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280. It is based on this standard that we review the above assignments of error.
 I
In their First Assignment of Error, appellants contend the trial court erred in finding that reasonable minds could only conclude that Appellee Lauren did not commit an intentional tort. We disagree. In support of this assignment of error, appellants do not challenge the trial court's reliance on the three-part test set forth in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115. Instead, appellants challenge the trial court's reference to the case of Pariseau v. Wedge Products, Inc. (1988), 36 Ohio St.3d 124. The trial court's reference to the Pariseau case is as follows in its judgment entry granting Appellee Lauren's motion for summary judgment: The Court concludes that the facts set forth in Pariseau * * * did not support the conclusion that an intentional tort had been committed against the Plaintiff employee by the Defendant employer and the undersigned concludes that the facts in this case are not as dramatic in support of the claim of intentional tort as the facts in Pariseau. Consequently, Plaintiffs' claims against Defendant Lauren Manufacturing Company sounding in intentional tort must be Dismissed with prejudice to refiling and Defendant's Motion for Summary Judgment Granted. (Emphasis sic.) Judgment Entry, March 8, 1999, at 6.
Appellants assert that the trial court erred when it compared the facts of the Pariseau case to the facts of the case sub judice and determined that a question of material fact did not exist as to the issue of intent. Appellants maintain subsequent cases have modified the Pariseau decision and as the law stands today, the plaintiff in Pariseau would have a valid intentional tort claim. Prior to addressing the issue raised by appellants in their First Assignment of Error, we will first review the history of workers' compensation in Ohio. In 1911, Ohio established the workers' compensation system by the adoption of Section 35, Article II of the Ohio Constitution. Miller, Blankenship v. Cincinnati Milacron Chemical Co: Workers' Compensation and the Intentional Tort, a New Direction for Ohio, (1987), 12 Cap.U.L.Rev. 286. Following the adoption of this constitutional provision, confusion and controversy remained regarding whether an employee could recover for injuries sustained from the intentional acts of his or her employer. Id. However, in 1982, the Ohio Supreme Court in the case of Blankenship v. Cincinnati Milacron Chemicals (1982), 69 Ohio St.2d 608, declared that an injured employee cannot recover, under Ohio's workers' compensation system, for injuries caused by the intentional conduct of his or her employer, but could seek recovery in a common law action. Id. The Court explained: The workers' compensation system is based on the premise that an employer is protected from a suit for negligence in exchange for compliance with the Workers' Compensation Act. The Act operates as a balance of mutual promises between the interest of the employer and the employee where by employees relinquish their common-law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common-law defenses and are protected from unlimited liability. But the protection afforded by the Act has always been for negligent acts and not for intentional tortious conduct. (fn. omitted.) Indeed, workers' compensation Acts were designed to improve the plight of the injured worker, and to hold that intentional torts are covered under the act would be tantamount to encouraging such conduct, and this clearly cannot be reconciled with the motivating spirit and purpose of the Act. Id. at 614. Two years after the Blankenship decision, the Ohio Supreme Court set forth a test for establishing an intentional tort. See Jones v. V.I.P. Dev. Co. (1984), 15 Ohio St.3d 90. The Ohio Supreme Court later refined this test in Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100 and Fyffe, supra. The Jones' decision altered intentional tort law by changing "intent", in the employment setting, to mean "substantially certain to occur." The Jones' decision also permitted an injured worker to recover under the workers' compensation system and sue his or her employer for an intentional tort. Finally, the Jones decision declared that an employer is not entitled to a setoff of an award from an intentional tort suit in the amount of workers' compensation benefits received. Richey v. The Johnson Hardin Co. (July 17, 1998), Hamilton App. No. C-970767, unreported, at 3-4. In the matter currently before the court, neither party claims that Appellee Lauren acted with "actual intent." Rather, appellants' claims rest upon the "substantially certain to occur" language found in the Jones' decision. The "substantially certain to occur" language sets forth an inferred intent concept. In the Fyffe case, the Ohio Supreme Court expanded on its decision in Jones, and its progeny, and formulated a three-part test to determine whether an employer's conduct would satisfy the inferred intent component of an employee's intentional tort claim. This three-part test is as follows:
 (1) Knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation.
 (2) Knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and
 (3) That the employer, under the circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. Fyffe at paragraph one of the syllabus.
Based on the above case law and a review of the trial court's judgment entry, we find the trial court correctly concluded that there was no basis upon which appellants could establish that Appellee Lauren had actual knowledge of a dangerous condition and actual knowledge that harm from the dangerous condition was substantially certain to occur. The analysis of "actual knowledge" of an employer must be of its subjective knowledge. Howard v. Columbus Prod. Co. (1992), 82 Ohio App.3d 129, 134, 135. As Appellee Lauren points out, it is easy to confuse the negligence concept of "knew or should have known" with the concept of "actual knowledge" which may be inferred from the facts in a particular circumstance. In a negligence action, it is a "reasonable person" standard of knowledge. However, in the arena of intentional tort, it is an "actual knowledge" standard. What a reasonable person should have known is not sufficient. The plaintiff in an intentional tort action must prove actual knowledge on the part of the employer by a preponderance of the evidence. Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172. Such proof may and usually will include circumstantial evidence through which actual knowledge may be inferred. If an "actual knowledge" standard is not followed, then the rationale of negotiated rights and responsibilities, upon which the Workers' Compensation Act is based, will cease to exist. Therefore, in considering a motion for summary judgment, the trial court must determine whether the specific factual allegations presented would cause reasonable minds to conclude that Appellee Lauren acted with intent to harm Appellant Lawanda Burkey. In conducting our de novo review of this issue, we will apply the three-part test contained in Fyffe. The first prong of the Fyffe test requires knowledge, by the employer, of the existence of a dangerous process, procedure, instrumentality or condition within its business operation. Both parties agree that the alleged dangerous instrumentality would be an unguarded or inadequately guarded puller. A dangerous condition, as defined in the employer intentional tort doctrine, must be something beyond the natural hazard of employment. Taulbee v. Adience, Inc., BMI Div. (1994), 120 Ohio App.3d 11, 17. Whether the puller was unguarded or inadequately guarded is not the essential question of fact required to be proven in order for appellants to survive summary judgment. Rather, appellants must prove, by a preponderance of the evidence, that Appellee Lauren had actual knowledge of the dangerous situation. Appellee Lauren does not concede that a dangerous condition existed. However, for purposes of this appeal, we will focus on the issue of proof or lack of proof of actual knowledge of a dangerous condition by Appellee Lauren. Appellants attempt to prove Appellee Lauren had actual knowledge of a dangerous condition by sworn statements from Appellant Lawanda Burkey and other Lauren employees that there was no guard on the puller at the time of the accident. Appellants further submit evidence that Appellee Lauren purchased the puller used, without any guard whatsoever. Specifically, Cathy Mackey, a Lauren employee, testified that she spoke with her foreman, Darla Graham, regarding the safety of the pullers. Gordon Reigle, another Lauren employee, testified that Appellee Lauren held regular safety meetings, at which numerous employees complained of the recurring safety issues on the line on which Appellant Lawanda Burkey was injured. Gordon Reigle also testified that management was informed that the methods used to feed material into the pullers were unsafe and ineffective, and that the employees who worked with the pullers were afraid of getting caught in them. We find, construing the evidence and the possible inferences to be drawn from the evidence, in favor of appellants, the non-movants, that a genuine issue of material fact exists as to whether the pullers were properly guarded in use, and whether Appellee Lauren knew this. As to the second prong of the Fyffe case, we find appellants have presented evidence which, if believed, satisfies the requirement that Appellee Lauren knew if its employees were subjected to the dangerous conditions, then harm was substantially certain. Two of appellee's management employees, Ronald Feigenhauer and Donald Liedtke, admitted as much. Darla Graham, the line foreman, testified that she advised her workers to keep their hands out of the pullers. Finally, we find appellant produced sufficient evidence which, if believed by the trier of fact, satisfies the third prong of the Fyffe test. The depositions of Cathy Mackey and Gordon Reigle allege that employees' complaints brought no action from Appellee Lauren. A reasonable jury could find Appellee Lauren required its employees to continue to perform the dangerous task. Thus, we conclude the trial court erred when it granted Appellee Lauren's motion for summary judgment as to appellants' intentional tort claim. Appellants' First Assignment of Error is sustained.
 II
Appellants contend, in their Second Assignment of Error, that the trial court erred in concluding, as a matter of law, that the puller was not in substantially the same condition from the time of manufacture until the time of injury. We disagree. This assignment of error challenges the trial court's grant of summary judgment, on behalf of Teledyne, on appellants' claim for product liability based on a defective guard. In support of this claim, appellants argue that there was no guard or that the guard provided was insufficient to meet standards of safety at the time it was manufactured. In granting Appellee Teledyne's motion for summary judgment, the trial court stated as follows: Plaintiffs have failed to establish that, at the time of Plaintiff Lawanda Burkey's injury at Lauren Manufacturing Company, the "puller" was in substantially the same condition as when it left Teledyne Farris Engineering's control. As a matter of law, Plaintiffs cannot prove the condition of the "puller" machine at the time it left the control of Teledyne Farris Engineering. Plaintiffs cannot prove, by a preponderance of the evidence, that the "puller" machine was in the same condition at the time of Plaintiff Lawanda Burkey's accident as it was at the time it left the control of Defendant Teledyne Farris Engineering. Plaintiffs have failed to establish that a defective design of the "puller" machine by Teledyne Farris Engineering was the proximate cause of her injury. Defendant Teledyne Farris Engineering is entitled to judgment as a matter of law because the facts considered by the Court pursuant to Rule 56(C), Ohio Rules of Civil Procedure, establish that a substantial modification of the "puller" machine occurred after the "puller" machine left the control of Teledyne Farris Engineering and before the accident involving plaintiff Lawanda Burkey at Lauren Manufacturing Company, New Philadelphia, Ohio. (Emphasis sic.) Judgment Entry, March 8, 1999, at 5.
Appellants acknowledge that they bear the burden of proving that the puller was in a defective condition when it left the hands of Appellee Teledyne. Appellants argue that the expert testimony of Simon Tamny unequivocally satisfied all the requirements of a design defect under the statute, regardless of whether the puller was originally equipped without a guard, or equipped with a Steiger guard. Appellants point out that Appellee Teledyne admits that the puller was either sold without a guard or retrofitted with a Steiger guard sometime after the sale. Appellants contend that under either scenario, the puller was defective by design as the foreseeable risk associated with the design exceeded the benefits associated with the design. If the puller was sold in an unguarded condition, it was defective for lack of point of operation guarding. If the puller was sold with a Steiger guard, a motion for summary judgment would have been defeated on the factual issue of safety design based on the expert testimony of Simon Tamny. However, appellants do not account for any intervening acts by other parties. The evidence submitted indicates there was at least one intervening owner prior to Appellee Lauren's purchase of the puller. There is further evidence that the puller was substantially overhauled when purchased by the intervening owner. When the intervening owner sold the puller to Appellee Lauren, there was evidence that no guard was on the machine. Further, there was evidence that Appellee Lauren or someone else added warning labels to the puller. Most importantly, there was substantial evidence that Lauren placed a Boston guard on the puller in question prior to Appellant Lawanda Burkey's injury. If Appellee Lauren installed the Boston guard, on the puller as claimed by appellants, then any liability for a defect in guarding would not fall on Appellee Teledyne, but rather Cross-Appellee Boston. It should be noted that, in fact, appellants settled with Cross-Appellee Boston for liability for defective design causing injury to Appellant Lawanda Burkey. Appellants' own expert, Simon Tamny, stated that Appellee Lauren purchased and installed a guard on the puller. Mr. Tamny testified, at his deposition, to the following: I know that [Lauren] bought a guard like the Mackey Exhibit 1, and I know that they installed a guard on the machine, and it's illogical that they would have installed a guard and didn't at least start out to be a Mackey 1. But whether they altered the in feed and out feed when they first put it on or they altered it later, I don't know. Depo. Simon Tamny at 59.
Later in the deposition, Mr. Tamny also stated: "[w]hatever guard was on the machine when it was purchased by Lauren was taken off by Lauren and substituted with another guard, most likely a Boston Matthews guard." Id. Appellee Teledyne submitted the sworn testimony of Mr. Liedtke. Mr. Liedtke stated that he ordered a new guard from Cross-Appellee Boston in 1994. A purchase order was placed in evidence confirming the order of the guard. An invoice from Cross-Appellee Boston confirms they shipped the guard to Appellee Lauren on February 25, 1994. Mr. Liedtke further stated that he installed the guard on the puller in question in March 1994. The installation was confirmed by a Lauren work order. The only evidence contrary is Appellant Lawanda Burkey's testimony that indicated there was no guard on the machine. Appellant Burkey did indicate that there was a clear plastic Plexiglas structure covering the top of the puller. Other employees could not specifically identify it as a Boston guard, but did indicate there was a Plexiglas guard on the puller at the time of the accident. This testimony is consistent with either the presence of a Boston guard or some other form of a guard on the puller. Appellants also argue that even if a new guard had been installed on the puller, that still would not relieve Appellee Teledyne from liability if the subsequent replacement guard was not sufficient to meet proper design standards. However, there is no evidence that Cross-Appellee Boston did not meet the proper safety design standards. Even with evidence that Cross-Appellee Boston's guide was defective, the removal of the guard provided by Appellee Teledyne and its replacement with Boston's guard would still relieve Appellee Teledyne of any liability for defective design as there could be no proximate causal relationship between the injury and a defectively designed guard provided by Appellee Teledyne. With such compelling evidence of intervening conduct, there can be no cause of action against the manufacturer, Appellee Teledyne, for a claim of product liability. Appellee Teledyne cannot be held liable for injuries resulting from the defective design of a product it did not design, manufacture, or put into the commercial setting. There can be no proximate cause between the manufacture and design of a puller and injuries caused by the use of the puller once the safety design had been materially altered. Thus, we conclude, in reviewing the evidence in a light most favorable to appellants, that appellants did not meet their burden to set forth specific facts demonstrating there is a genuine issue of material fact for trial. The trial court did not err when it granted summary judgment on behalf of Appellee Teledyne on appellants' claim for product liability. Appellants' Second Assignment of Error is overruled.
Cross-Appeal I, II
We will not address Appellee Teledyne's two assignments of error it raises on cross appeal as both are moot based on our disposition of appellants' assignments of error.
For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.
 ___________________ Wise, J.
By: Gwin, P.J., and Farmer, J., concur.