OPINION
In this case, Egil Tomson appeals from a trial court decision determining his child support obligation for the years 1993 through 1998. The court's action was taken as the result of an opinion we issued in this case. See In re O'Herron (July 7, 2000), Montgomery App. Nos. 18213, 18214, unreported, 2000 WL 896376. In our opinion, we decided that Tomson should be held responsible for paying support retroactive to his daughter's date of birth. 2000 WL 896376, p. 5. Consequently, we remanded the case to the trial court for a decision on the amount of retroactive support that was due.
On remand, the trial court found a support arrearage of $82,896.33 and ordered Tomson to pay $500 per month to satisfy the debt. At the time, Tomson was already paying $643.15 per month in child support. Accordingly, Tomson's total monthly support obligation increased to $1,143.15.
In support of the present appeal, Tomson raises the following assignments of error:
I. The trial court erred by including incorrect income from Appellant's wife in calculation of child support.
II. The trial court abused its discretion by failure to impute income to Appellee for the 1998 child support calculation.
III. The trial court erred by including childcare expenses in the child support worksheet that have not been accurately verified.
IV. The trial court abused its discretion by order of payment on child support arrearage that is excessive and unjust.
 I
In the first assignment of error, Tomson contends that the trial court committed reversible error because R.C. 3113.215(B(5)(e) does not allow a spouse's income to be included when support is calculated. According to Tomson, the trial court improperly used the "adjusted gross income" figure from his tax returns without considering the amount of income his wife earned. In this regard, Tomson admits that he submitted only tax returns at the retroactive support hearing. However, he also says that he asked the trial court to consider testimony from a prior hearing that was held on August 11, 1999. The transcript from that hearing allegedly contains evidence about his wife's contributions to income.
When this case was remanded, a magistrate held a hearing on the retroactive support issue. Tomson did not appear at the hearing, and no testimony was taken. Instead, both parties simply submitted their federal income tax returns for the years 1993 through 1998. In addition, O'Herron submitted information about Mr. Tomson's current income. During the hearing, Tomson's attorney did note that the matter was on remand and that the record contained a transcript from a prior evidentiary hearing held on August 11, 1999. Tomson's attorney then asked the magistrate to consider the evidence in the transcript before making a decision. In response, the magistrate agreed to review the entire record.
However, the magistrate did not refer to the transcript when she filed the decision. Instead, she simply used the adjusted gross income figures from the Tomsons' joint tax returns. Based on these figures, the magistrate calculated the support due each year between 1993 and 1998. As we said, the total arrearage for those years was about $82,896.
Tomson timely objected to the decision, claiming that the magistrate had erred by including his spouse's income in the support calculations. However, the trial court overruled the objection. In this regard, the court first stressed that the parties had mentioned a transcript during the support hearing, but had not provided the court with the transcript. After making this remark, the court discussed the tax returns for the years 1993 through 1995. According to the court, these returns indicated that Ms. Tomson (the spouse) did not earn any income from a third party employer. The court noted that some business loss was shown for those years. The court then commented that Tomson did not submit a Schedule C, showing which spouse had incurred the loss.
Next, the court discussed the remaining tax returns. Specifically, for the year 1996, Ms. Tomson was listed on the tax return as the sole proprietor of "GT's Stuff," and Mr. Tomson was listed as the sole proprietor of "Boat." These businesses sustained losses in 1996, of $1,320 and $6,515, respectively. For the year 1997, Ms. Tomson was listed as the sole proprietor of both Boat and GT's Stuff, with respective losses of $6,630 and $1,815. Finally, the tax return for 1998 listed Ms. Tomson as the sole proprietor of Boat and another business listed as "Real Estate Sales." Again, these businesses showed losses of $4,269 and $5,343, respectively. GT's Stuff was not listed as a sole proprietorship for either husband or wife in the 1998 tax year. Based on these returns and the fact that both Tomsons had claimed business losses, the trial court held that the magistrate had properly used the amounts taken from line 22 of Form 1040. Therefore, despite the fact that some schedule C forms were not provided, and despite the fact that some businesses were owned by his spouse, Tomson received a reduction in his gross income for child support for business losses sustained in years 1993 through 1998. These reductions ranged from a low of $3,876 to a high of $9,612.
Support decisions are reviewed for abuse of discretion, i.e., we consider whether the trial court acted arbitrarily, capriciously, or unreasonably. Jackson v. Jackson (2000), 137 Ohio App.3d 782, 799. In the present case, we find that the trial court did act unreasonably by failing to consider the hearing transcript. Specifically, the parties did not have to furnish the court with the transcript, since a transcript had previously been filed and was available for review. See Doc. #27, indicating that the August 11, 1999 transcript was filed with the trial court on November 11, 1999.
While the evidence in the transcript about Ms. Tomson's support is not lengthy, the trial court should still have considered it. In the transcript, Mr. Tomson testified that the majority of the income on the tax returns was not his, and that his wife had a job managing a store during the years in question. At another point, Tomson testified that his wife never actually told him what she made in 1997, but that he "figured" she had made $25,000. Tomson's credibility might be questioned, since testimony at the hearing (based on documents from his employer) showed that Tomson earned $97,275.36 in 1997. In comparison, the 1997 tax return reports income from wages, salaries, and tips of $102,134. Since there is a difference of less than $4,000 between these amounts, we are at a loss to understand how Tomson's wife could have earned $25,000 that year. Further, a comparison of the figures from the August, 1999 transcript with the tax returns indicates that Tomson did, in fact, earn the majority of household income. On the other hand, the wage evidence from Tomson's employer that was presented during the August, 1999 hearing does reveal some differences between the amount of income reported from wages on the joint tax returns and what Tomson received in wages from his employer. For example, the figure for wages reported on line 7 of Tomson's 1993 Form 1040 is $128,299. In contrast, Tomson's total income for 1993 from his employer (as disclosed at the hearing) was $113,800. Similarly, Tomson's 1994 income, according to evidence at the hearing, was $111,888.17, while the 1994 tax return reports income from wages of $129,680.
Since the trial court failed to review this evidence, we cannot tell what weight it would have given to the testimony or how it would have treated the discrepancy in figures. Accordingly, the first assignment of error will be sustained, and this case will be remanded so that the trial court can consider the transcript from the August 11, 1999 hearing.
As an aside, we note that the evidence submitted in this case did not comply generally with R.C. 3113.215(B)(5)(a), which states that when a court computes child support, "the parents shall verify current and past income and personal earnings with suitable documents, including but not limited to paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns." Various courts have held that while "a tax return is a proper reference point to aid in calculating a parent's gross income, it is not the sole determining factor of what constitutes a parent's `gross income' or `ordinary and necessary expenses.'" Houts v. Houts (1995), 99 Ohio App.3d 701, 706;Marvin v. Marvin (Feb. 7, 1997), Portage App. No. 96-P-0185, unreported, 1997 WL 123914, p. 2; and Showalter v. Showalter (Nov. 25, 1996), Clermont App. No. CA95-11-082, unreported, 1996 WL 679681, p. 5. This would be particularly true in cases like the present, where some tax returns are not even signed and schedules are missing.
In Marcus v. Marcus (July 30, 1999), Greene App. No. 98 CA 83, unreported, 1999 WL 960772, we explained that:
 the purposes underlying the Internal Revenue Code and the child support guidelines are vastly different. The tax code permits or denies deduction from gross income based on myriad economic and social policy concerns which have no bearing on child support. The child support guidelines in contrast are concerned solely with determining how much money is actually available for child support purposes. To this end, R.C. 3113.215(A)(2) includes nontaxable income in "gross income" for purposes of calculating child support. This recognized the economic reality that all money earned by a parent, irrespective of its taxability, is in fact income to that parent.
1999 WL 960772, at p. 5.
Accordingly, while tax returns can assist the court, they do not control the issue of "gross income" for child support purposes. As we mentioned earlier, the figures used by the trial court allow deduction for various business losses sustained by Mr. Tomson's spouse. For example, the adjusted gross income on the 1997 tax return was decreased by $8,445 for Ms. Tomson's business losses. Likewise, the 1998 return shows a $9,612 deduction for her business losses. In contrast, the statute governing calculation of child support clearly states that "`[s]elf-generated income' means gross receipts received by a parent from self-employment, proprietorship of a business, * * * and rents minusordinary and necessary business expenses incurred by the parent ingenerating the gross receipts." R.C. 3113.215(A)(3) (emphasis added). Clearly, income and expenses of a spouse operating a sole proprietorship would not be income and expenses of the parent. Moreover, even Mr. Tomson's losses for his own sole proprietorship ($6,515 in 1996), should not have been deducted or used as an offset unless they were proven to be actual expenditures that were "ordinary and necessary." Muehrcke v.Muehrcke (Oct. 22, 1998), Cuyahoga App. No. 73434, unreported, 1998 WL 741942, p. 5. Close scrutiny is particularly appropriate where a parent is a sole proprietor or sole stockholder of a corporation and has control of the entity's income and disbursements. See, e.g., Sizemore v.Sizemore (1991), 77 Ohio App.3d 733, 738-39.
Since no cross-appeal was filed, and no assignment of error was raised concerning this point, it has been waived. As a result, the trial court cannot consider it on remand. See Howard v. Columbus Prod. Co. (1992),82 Ohio App.3d 129, 136. Nonetheless, we note the problem to raise awareness of the need for proper documentation and close scrutiny of claimed income and expenses.
Based on the preceding discussion, the first assignment of error is sustained, and this case is remanded so that the trial court can reconsider the issue of child support for the years 1993 through 1998, taking into account the content of the transcript of the August 11, 1999 hearing. We express no opinion on the possible outcome of the decision, since the trial court may accept or disregard any evidence before it.
 II
The second assignment of error challenges the trial court's failure to impute income to O'Herron in the 1998 child support calculation worksheet. In our prior opinion, we rejected a similar claim concerning the trial court's failure to impute income to O'Herron when ordering support for the period of time following the filing of the paternity action in December, 1998. In re O'Herron (July 7, 2000), Montgomery App. Nos. 18213, 18214, unreported, 2000 WL 896376, p. 9. We noted that the issue was close, and said the matter might be a proper subject for future modification of the child support award. Id. Although our remarks were directed to future modification of the current award, Tomson was not precluded from showing, on remand, that income should be imputed to O'Herron for any time period related to retroactive support. The proper amount of child support for that time period had not yet been decided, and was the specific focus of remand.
Specifically, since the trial court had to calculate the respective incomes of the parties to determine the correct amount of retroactive support, we see no reason why Tomson could not have presented evidence to buttress his claim that O'Herron was voluntarily unemployed — at least for the year 1998 (O'Herron was fully employed during the prior years). In this regard, we noted in our prior opinion that the evidentiary record was sparse. We even suggested evidence that would aid review. Id. However, on remand, Tomson did not ask the magistrate to impute income for the year 1998, nor did he present any evidence on the point. Admittedly, the prior testimony was available to the trial court. However, we had already deemed that testimony inadequate to establish that income should be imputed for 1999. Therefore, if Tomson wanted to prove that O'Herron was voluntarily unemployed in 1998 and that income should be imputed, he should have presented further evidence. As has been said many times, "[a] party will not be permitted to take advantage of an error which he himself invited or induced." Hal ArtzLincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div. (1986),28 Ohio St.3d 20, syllabus.
For the support year 1998, the magistrate used the adjusted gross income figure from line 22 of O'Herron's tax return ($33,641) to calculate the amount of child support that was due. Tomson then filed objections, claiming that the magistrate should have imputed income to O'Herron. However, the trial court rejected the objection because there was nothing new in the record to support the claim. We agree, and find no abuse of discretion. Rock v. Cabral (1993), 67 Ohio St.3d 108, 112.
Accordingly, the second assignment of error is without merit and is overruled.
 III
In the third assignment of error, Tomson contends that the trial court erred in including childcare expenses in the child support worksheet that were not accurately verified. The expense information was taken from O'Herron's tax returns. For example, Form 2441 for the 1993 tax return shows child and dependent care expenses of $1,118. The magistrate then credited O'Herron with this amount in calculating the 1993 support award. According to Tomson, the trial court should have required verification or documentation beyond what was contained in the federal tax returns.
Again, Tomson did not present evidence on this point. In fact, the magistrate specifically asked at the hearing whether daycare expenses were listed in O'Herron's tax returns. In response, O'Herron's attorney indicated that the expenses were listed in the returns. During this discussion, the magistrate also asked about including health care premiums that O'Herron paid. In this regard, the parties stipulated that health care premiums would not be pursued because the effort would not be worth the minuscule credit. Immediately after this discussion, the following exchange occurred:
 Ms. Harvey (O'Herron's attorney): Essentially what we're asking you to consider is mom's income, dad's income and the daycare as reflected in the tax returns.
 The Court: And during all of these times is it stipulated that there were no other children in the house.
Ms. Harvey: Correct.
 The Court: (Unintelligible) parties. And that neither party had to pay support or alimony to anybody else?
 Ms. Harvey: Correct, there were no other minor children involved (Unintelligible).
 The Court: Or alimony to anybody else, either one of them.
Mr. Kirkland (Tomson's attorney): Right.
Ms. Harvey: Correct.
The Court: Okay, I accept that stipulation.
No other comments were made about daycare at the hearing. After the magistrate issued a decision, Tomson objected because the accuracy of the daycare expenses had not been verified. The trial court overruled the objection, finding that Tomson was estopped from contesting the point since he had not asked for such information in discovery and had not raised the issue at the hearing.
Again, we find no abuse of discretion in the court's ruling. If Tomson contested the accuracy of the expenses, the time to speak was at the hearing. Having failed to either object or offer evidence, Tomson may not now take advantage of alleged error that he invited. Hal ArtzLincoln-Mercury, Inc., 28 Ohio St.3d 20, syllabus. We also note that although the tax returns were not verified, they do contain the addresses and social security or tax identification numbers of persons furnishing daycare services. Thus, if Tomson wanted the underlying data, it was readily available.
In view of the preceding discussion, the third assignment of error is overruled.
 IV
In the final assignment of error, Tomson claims the trial court abused its discretion in ordering an excessive and unjust amount of payment on the child support arrearage. After the hearing, the magistrate found an arrearage of $82,896.33, based on the amount of retroactive support to the date of birth. Previously, Tomson had been ordered to pay $50 per month on the arrearage, but this amount was increased to $500 per month. As we mentioned earlier, that amount, plus the current support award, resulted in a total child support payment of about $1,143 per month. At the time of the hearing, or through November, 1999, Tomson had earned about $111,919 for the year.
In objecting to the magistrate's decision on the arrearage payment, Tomson claimed that it was unfair because of the cost of taxes in New York and New Jersey. He also contended that the cost of living in his own city was high. The trial court did not specifically address this point in its decision. The court did discuss the allegation that the arrearage was unfair. However, the court did so in the context of whether the income of Tomson's spouse was improperly included in gross income.
Although the court erred in failing to address Tomson's objection, we are required to affirm a correct decision, even it if it is made for the wrong reasons. Joyce v. General Motors Corp. (1990), 49 Ohio St.3d 93,96. After reviewing the record, we find no error in requiring a $500 payment on the arrearage. In the first place, Tomson did not raise the issue of taxes or cost of living at the hearing. As we stressed earlier, that was the time for bringing pertinent issues to the court's attention, and for supporting the issues with appropriate evidence.
Furthermore, even if we consider the tax returns as some evidence on the issue, there is no significant difference in tax rates. For example, the 1996 return reflects remotely comparable income (adjusted gross income for Tomson and O'Herron, respectively, of $123,019 and $84,956). However, little difference exists in the state and local tax rates. In 1996, Tomson paid about eight percent of his income that year in state and local taxes, while O'Herron's tax contribution was about six percent. This is not a great difference.
Notably, however, Tomson's tax return for the next year (1997) reveals that he received a tax refund in 1996 of about $5,425. Only $3,668 is attributable to the 1996 federal tax refund, meaning that the remainder ($1,757) was a refund or offset of state or local taxes. Consequently, the actual percentage of Tomson's income that was used for state and local taxes in 1996 was about seven percent. Given this minimal difference, and the significant income earned by Tomson in 2000, we find no merit in Tomson's complaint about the amount of the arrearage payment. In this regard, we note that even if Tomson pays $500 monthly toward the arrearage, the debt will not be satisfied for more than 13 years. Ordering a slower rate of payment, without proper justification, would be unfair to Tomson's minor child.
As a final matter, we noted in our prior opinion that the only evidence about differences in cost of living was testimony that cheeseburgers were "a little bit higher in New York." O'Herron, 2000 WL 896376 at p. 8. We specifically said that this evidence was "vague and unconvincing." Id. Given this remark, and the lack of any further evidence on this issue, the trial court did not abuse its discretion by rejecting cost of living as a factor. Again, if Tomson wanted the court to consider differences in cost of living, he should have offered additional evidence. Consequently, the fourth assignment of error is overruled.
In light of the preceding discussion, the first assignment of error is sustained, and the second, third, and fourth assignments of error are overruled. Accordingly, the trial court judgment is affirmed in part and reversed in part. This case is remanded for further consideration by the trial court of the proper amount of retroactive support for the years 1993 through 1998, taking into consideration the transcript of the August 11, 1999 hearing.
FAIN, J., and YOUNG, J., concur.