CSS PUBLISHING COMPANY, INC. et al., Appellees and Cross–Appellants,

v.

AMERICAN ECONOMY INSURANCE COMPANY, Appellant and Cross-Appellee; Sullivan Insurance Agency, Appellee.

[Cite as CSS Publishing Co. v. Am. Economy Ins. Co. (2000), 138 Ohio App.3d 76.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–2000–10.

Decided June 6, 2000.

*Robert P. Rutter,* for appellees and cross–appellants.

*Robert E. Chudakoff,* for appellant and cross–appellee, American Economy Insurance Company.

*John G. Witherspoon, Jr.,* for appellee, Sullivan Insurance Agency, Inc.

---

HADLEY, Presiding Judge.

The defendant-appellant, American Economy Insurance Company ("American"), appeals the decision of the Allen County Court of Common Pleas granting partial summary judgment in favor of the plaintiffs-appellees, CSS Publishing ("CSS") et al. American is also appealing the trial court's denial of its first and second motions' for partial summary judgment. CSS filed a cross-appeal, appealing the decision of the trial court granting American's third motion for

partial summary judgment and defendant Sullivan's motion for summary judgment. For the following reasons, we affirm the judgment of the trial court.

The pertinent facts and procedural history of this case are as follows. The plaintiffs/appellees/cross-appellants in this case are CSS Publishing Company and its officers.[1] CSS is a publisher of religious books and materials. Materials published under the CSS label are done so in the traditional way, *i.e.,* CSS pays the entire cost of producing and marketing the books it publishes and pays the authors royalties on the sales. Fairway Press is a division of CSS and operates in a slightly different manner. Authors seeking to have their materials published by Fairway Press are required to pay a fee for such services. After the books are published, the author receives a portion of the books and CSS retains a certain number and stores the books in a warehouse. CSS advertises these books in its publications and fills any orders it may receive. The authors receive a royalty from any books sold by CSS. The amount the Fairway authors receive is substantially higher than that received by CSS authors because the Fairway authors are required to help pay for the printing of their books.[2]

The defendants/appellants/cross-appellees are American Economy Insurance Company and Craig Sullivan.[3] This matter involves a fire insurance policy issued by American to CSS. This policy covered several locations in and around the Lima area, including a warehouse located at 165 East Circular Street. On May 29, 1995, a fire occurred at this warehouse and severely damaged the buildings and the property stored in the warehouse. CSS submitted a claim to American for the damage, including the loss of the Fairway books. All portions of the claim were settled by the parties, except for the claim for the Fairway books.

American refused to pay the $300,000 claim CSS made for the Fairway books. American classified these books as the personal property of others and CSS's limit for such property was $40,000. This limit had already been depleted by property other than the Fairway Books and, therefore, they were not covered under the policy. CSS alleges that the Fairway books were not the personal property of others but rather business personal property for which it had a claim limit of $2,795,000.

---

1. The officers of CSS named in the complaint include Wesley Runk, President, Mary Beth Runk, Treasurer, Patti Furr, Vice President, Wesley David Runk, Vice President, Timothy A. Runk, Vice President, Jean Hines, Executive Vice President, and Barbara Ellen Shockey, Vice President/Secretary.

2. CSS authors traditionally receive a royalty of four to ten percent of the sale price, while Fairway authors receive forty-five to fifty-five percent of the sales price.

3. Craig Sullivan is the agent of American Economy Insurance responsible for procuring the policy for CSS Publishing.

The parties were unable to come to an agreement on this issue and on January 5, 1999, CSS filed a complaint against American and Sullivan in the Allen County Court of Common Pleas. In the complaint, CSS requested declaratory relief and charged American with breach of contract, lack of good faith, and reformation of the insurance contract. The complaint also charged Sullivan with negligence for failure to procure proper or adequate coverage. Both American and Sullivan filed answers to the complaint, and the parties proceeded with discovery.

On October 29, 1999, CSS filed a motion for declaratory relief and partial summary judgment. It asked the court to determine whether the Fairway books damaged in the fire were "personal property of others" subject to the policy's $40,000 limit or "business personal property," covered up to a $2,795,000.00 limit. On December 1, 1999, American filed three motions for partial summary judgment. In its first motion, American sought a judgment declaring the entire contract void due to CSS's violation of the "Concealment, Misrepresentation and Fraud" conditions of the policy. American claims that CSS misrepresented and/or concealed documents from a previous 1989 claim. In its second motion, American asserts that there is no genuine issue of material fact with respect to CSS's claim of bad faith and punitive damages and attorney fees. In its third motion, American asserts that all named plaintiffs, besides CSS, are not insured individually under the commercial property coverage provisions of the insurance contract and have no standing to sue in this case. On December 2, 1999, Sullivan filed a motion for summary judgment. Sullivan alleged that there was no genuine issue of fact as to whether he was negligent by not obtaining adequate coverage for the Fairway books.

On January 18, 2000, the trial court filed its judgment entry and ruled as follows:

"1. CSS is entitled to partial summary judgment and the declaratory relief sought: that Fairway Press Books destroyed by the May 29, 1995 fire were covered under the **'Your Business Personal Property'** coverage provision in the policy.

"2. American's first motion is without merit. American has not specifically pointed to evidence, of the type listed in Civ.R. 56(C), which affirmatively demonstrates that CSS has no evidence to support its claims that CSS did not intentionally fail to give the document to American.

"3. American's second motion for partial summary judgment is denied. The court finds a jury question presented in this case with regard to whether American's conduct can be characterized by hatred or ill will, a spirit of revenge, [or] retaliation.

"4. American has demonstrated why the individual plaintiffs, other than CSS, are not insured under the Commercial Property Coverage provisions, and is therefore, entitled to partial summary judgment as requested in its third motion.

"5. Sullivan is entitled to summary judgment because the court has previously determined that Fairway Press books were covered under CSS' insurance policy as 'business personal property.' "

It is from this judgment that American appeals, asserting four assignments of error. CSS also appeals, asserting in its cross-appeal two assignments of error.

Before addressing the parties' assignments, it is necessary to set forth the standard of review in this matter. In considering an appeal from the granting of a summary judgment, we review the grant of the motion for summary judgment independently and do not give deference to the trial court's determination. *Schuch v. Rogers* (1996), 113 Ohio App.3d 718, 720, 681 N.E.2d 1388, 1389–1390. Accordingly, we apply the same standard for summary judgment as did the trial court. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413–414.

Summary judgment is proper when, looking at the evidence as a whole (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196, 1201–1203. To make this showing, the initial burden lies with the movant to inform the trial court of the basis for the motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. Those portions of the record include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action. Civ.R. 56(C). Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(C), indicating that a genuine issue of material fact exists for trial. *Dresher v. Burt,* 75 Ohio St.3d at 293, 662 N.E.2d at 273–274.

First, we will address the assignments of error raised by American. In the interest of clarity and brevity, American's assignments of error will be addressed out of numerical order.

American's Second Assignment of Error

"The trial court erred in declaring as a matter of law that the Fairway Press Books were covered as 'stock' under 'your business personal property' pursuant to the terms of the policy; and in granting a declaratory judgment for Appellee CSS and not American Economy on the issue of coverage."

American alleges that the terms of the policy preclude the Fairway books from being covered as stock. American claims that ownership of the books is required before they can be considered "stock" and afforded coverage under the business personal property provision of its policy. For the following reasons, we disagree.

The provision of the policy in question reads as follows.

"b.  Your Business Personal Property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified * * *

"(1) Furniture and fixtures;

"(2) Machinery and equipment;

"(3) 'Stock';

"(4) All other personal property owned by you and used in your business;

"(5) Labor, materials or services furnished or arranged by you on personal property of others;

"(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions: * * *

"(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others."

"Stock" is defined in the policy as follows:

" 'Stock' means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping."

American asserts that ownership is a necessary prerequisite for an item to be considered stock as defined in their policy. However, nowhere in the policy is this specified. The policy simply states that stock is merchandise *held* in storage or for sale. The issue of ownership is not addressed in the policy with regard to these items. While the issue of ownership is specified elsewhere in the provision,[4] in regard to stock the policy is silent. Additionally, the term "stock" is

---

4.  The item listed directly below "stock" states, "all other personal property owned by you and used in your business." .

specifically defined in the policy and ownership of the merchandise is not part of the definition.

In reviewing the issue of coverage under a policy, insurance policies are generally interpreted in accordance with the same rules as other types of contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1100–1101. When the language of an insurance policy is determined to be uncertain or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured party. *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 38, 31 OBR 83, 86–87, 508 N.E.2d 949, 952. However, in the event the terms of the insurance policy are clear and unambiguous, the interpretation of the policy is a matter of law. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 449, 474 N.E.2d 271, 272. Therefore, the issue of coverage under a policy may be appropriately resolved upon summary judgment. *Id.*

While the trial court found that the provision in question was susceptible of differing interpretations, we do not agree. When the language of the policy is afforded its plain and ordinary meaning, the policy is clear and unambiguous. The interpretation American proposes creates an ambiguity in the policy where none exists. The evidence clearly shows that the Fairway books meet the definition of "stock" as defined in the policy. CSS held these books in its warehouse for sale. It advertised the books to the public in its various publications and when orders were placed, they were filled out of the books stored in the warehouse. The Fairway books clearly fall within the policy's definition, as well as the common-sense definition of "stock" and are covered as business personal property under the policy of insurance issued by American. Therefore, summary judgment was proper on this issue.

Accordingly, American's second assignment of error is overruled.

### American's First Assignment of Error

"The trial court erred in declaring as a matter of law that Appellee CSS owned the Fairway Press Books because title had not yet passed to the authors under the U.C.C.; and in granting a declaratory judgment for Appellee CSS and not American Economy on the issue of coverage."

Due to our disposition of American's second assignment of error, we find that American's first assignment of error has been rendered moot.

### American's Third Assignment of Error

"The trial court erred in denying American Economy's first motion for partial summary judgment and refusing to void the insurance policy due to breach of the

'Concealment, Misrepresentation or Fraud' condition of the policy by Appellee CSS."

American claims that the entire insurance policy is void due to CSS's violation of the "Concealment, Misrepresentation, or Fraud" provision of the policy. American claims that CSS intentionally concealed a document concerning a 1989 claim CSS made for water damage to the Fairway books. At the bottom of the document in question, someone by the name of "Jean" stated that the books were "owned by the authors." For the following reasons, we find that American is not entitled to summary judgment on this issue.

When the dispute over the coverage of the Fairway books initially arose, Wes Runk remembered that American had paid a water damage claim for the Fairway books in 1989. Runk found the file pertaining to this claim and turned it over to John Woodward, CSS's public adjuster. Woodward reviewed the file and found its contents, including the footnote in question, mainly irrelevant. Later, American requested these documents from Woodward, at which time he had misplaced the file and was only able to locate a one-page proof of loss form from the 1989 claim.

American claims that these actions by Woodward constitute intentional misrepresentation and concealment and therefore render the entire insurance policy void. American supports this claim with the deposition testimony of Woodward and Runk. However, neither Woodward nor Runk admitted to intentionally concealing the document in question. In fact to the contrary, they both offer explanations for their actions and vehemently deny the allegations of American. Furthermore, it is unclear from the evidence whether the actions of Woodward would be imputed to CSS.

We find that genuine issues of material facts remain to be litigated as to whether CSS violated the "Concealment, Misrepresentation, or Fraud" provision of the insurance policy. Therefore, American's third assignment of error is not well taken and is overruled.

## American's Fourth Assignment of Error

"The trial court erred in denying American Economy's second motion for partial summary judgment re: extra-contractual claims [sic]."

American claims that there is no evidence to support CSS's claims of bad faith or request for punitive damages and attorney fees. For the following reasons, we disagree.

In *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, the Supreme Court of Ohio determined that an insurer fails to exercise good faith in processing a claim of its insured where its refusal to pay the claim is not

predicated upon circumstances that furnish reasonable justification. American maintains that while it believes that it was correct in not to processing CSS's claim, even if the court were to find differently, its actions were still reasonable. American supports this claim with the deposition testimony of John Woodward, CSS's public adjuster. Woodward testified that the issue of whether the Fairway books were personal property of others was, in his mind, "a fairly debatable issue." American also provided evidence establishing that it thoroughly investigated this matter before denying CSS's claim.

CSS provided evidence in support of its assertion that American acted in bad faith. CSS provided two letters written by Craig Sullivan, a licensed agent of American, to American expressing concern with the "get tough" position American was taking. Sullivan also stated that he could foresee a "potential bad faith award brought by the apparent unavoidable future litigation." CSS also provided the deposition testimony of Darla Treglia, a CSS employee. Treglia overheard a conversation between two American representatives attending a meeting at CSS. She testified that one of the men expressed how he "loved this part of the job and how he liked to come in and put the pressure, keep them moving, keep them squirming." He further stated that he could not wait until the next meeting because "they either take what we offer or they don't get anything." Furthermore, there is some evidence indicating that American changed the coverage it afforded CSS six months prior to the fire without notifying CSS of the change.

We find that competing reasonable inferences could be drawn from the evidence presented by the parties. Therefore, genuine issues of material fact remain to be litigated as to whether American acted in bad faith.

The conduct necessary to support an award of punitive damages is separate from that sufficient to establish bad faith. Punitive damages are recoverable in an action against an insurance company for breach of its duty of good faith in refusing to pay a claim only upon proof of actual malice, fraud, or insult on the part of the insurer. *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315. Actual malice is (1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 575 N.E.2d 416. Furthermore, in addition to the requisite mental state, an award of punitive damages must also be supported by a showing of misconduct greater than that required to prove negligence. *Id.* at 474, 575 N.E.2d at 419–420.

A thorough review of the evidence presented by both parties shows that genuine issues of material fact remain to be litigated as to whether the conduct of

American supports an award of punitive damages and attorney fees. Therefore, summary judgment is not a proper remedy at this time.

Accordingly, American's fourth and final assignment of error is overruled.

We will now address the assignment's of error raised by CSS in its cross-appeal.

CSS' First Assignment of Error

"The trial court erred in dismissing the individual bad faith claims of CSS' officers and directors."

CSS contends that the officers and directors of CSS have standing to maintain individual claims against American, as unnamed insureds or third-party beneficiaries to the insurance contract. For the following reasons, we disagree.

The language of the "Business and Personal Property Coverage Form" specifically states, "[T]he words 'you' and 'your' refer to the Named Insured shown in the Declarations." The declarations for this part of the policy list CSS Publishing Company as the sole named insured. The language of the policy is clear, unambiguous, and not susceptible of more than one interpretation.

CSS seeks to have this court construe the policy by looking to other parts of the policy, specifically the "Commercial General Liability Coverage Form," which expands the definition of a named insured. However, the language of that portion of the policy is irrelevant when each section of the policy contains separate and distinct definitions of who is covered as a named insured. Furthermore, the fact that the policy does contain separate definitions for each section supports American's contention that it was never the intent of the parties to include the officers and directors of CSS as named insureds under the commercial property portion of the policy. The general rule of liberal construction cannot be employed to create an ambiguity where there is none. *ALD Concrete & Grading Co. v. Chem–Masters Corp.* (1996), 111 Ohio App.3d 759, 677 N.E.2d 362. As stated previously, in the event the terms of the insurance policy are clear and unambiguous, the interpretation of the policy is a matter of law. *Inland Refuse Transfer Co.*, 15 Ohio St.3d at 322, 15 OBR at 449, 474 N.E.2d at 272.

CSS also alleges that the individual officers and directors are third-party beneficiaries to the insurance contract. The policy in question is an insurance policy on the business and personal property of CSS. The intent of the policy is

not to benefit the employees of CSS. Therefore, this argument is without merit. As no genuine issues of material fact exist as to whether the officers and directors of CSS have standing to sue, summary judgment is appropriate on this issue.

Accordingly, CSS's first assignment of error is overruled.

### CSS' Second Assignment of Error

"The trial court erred in dismissing the negligence claim against Sullivan Insurance Agency, Inc."

CSS alleges that Craig Sullivan was negligent in failing to obtain appropriate coverage for the Fairway books. The trial court granted Sullivan summary judgment due to the determination that the books were covered under the insurance policy as business personal property. CSS requests that if this court were to reverse the trial court's ruling with respect to coverage of the Fairway books under the insurance policy, its negligence claim against Sullivan be reinstated. This court has not reversed the judgment of the trial court and has also found that the Fairway books were afforded coverage under the insurance policy.

Accordingly, CSS's second assignment of error is not well taken.

Having found no error prejudicial to American or CSS herein, in the particulars assigned and argued, we affirm the judgment of the trial court in its entirety.

*Judgment affirmed.*

WALTERS and THOMAS F. BRYANT, JJ., concur.