MARKOWITZ, Appellant,

v.

OHIO DEPARTMENT OF INSURANCE, Appellee.

[Cite as *Markowitz v. Ohio Dept. of Ins.* (2001), 144 Ohio App.3d 155.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–1300.

Decided June 7, 2001.

The *Zagrans Law Firm* and *Eric H. Zagrans,* for appellant.

*Betty D. Montgomery*, Attorney General, *Lawrence D. Pratt, Scott Myers* and *Ann E. Henkener*, Assistant Attorneys General, for appellee.

---

BROWN, Judge.

Steven L. Markowitz, M.D., plaintiff-appellant, appeals a decision of the Ohio Court of Claims granting a motion for summary judgment in favor of the Ohio Department of Insurance, defendant-appellee.

On February 13, 1998, appellant filed a class action complaint (on behalf of himself and all others similarly situated) against appellee in the Court of Claims. In his complaint, appellant stated that he is a physician in the state of Ohio with a medical practice located in Parma, Ohio. Appellant was insured since July 1992 by a medical professional liability policy issued to him by the P.I.E. Mutual Insurance Company ("PIE"). Appellant also stated in the complaint that he had litigation pending against him for which PIE owed him insurance coverage and was obligated to defend his interests.

In his complaint, appellant stated that on or about July 2, 1997, PIE and The Doctors' Company entered into an agreement for the orderly winding down of PIE's existing insurance contracts and for the sale of its customer list. The agreement was subject to appellee's approval. Appellant claimed that from October 14, 1997 to December 15, 1997, appellee and PIE entered into a confidential consent order pursuant to R.C. 3903.09, which allowed appellee to supervise PIE during that time period. After evaluating PIE's assets, on December 10, 1997, appellee sought an order of rehabilitation for PIE pursuant to R.C. 3903.12 before the Franklin County Court of Common Pleas. On December 15, 1997, the requested order of rehabilitation was entered against PIE. See, also, *Duryee v. PIE Mut. Ins. Co.* (Dec. 1, 1998), Franklin App. No. 98AP–535, unreported, 1998 WL 832180.

Appellant stated in his complaint:

"During [appellee's] supervision of PIE from October 14, 1997 through December 15, 1997, inclusive, and continuing thereafter, [appellee] and its officials and employees owed PIE's insureds the duty to carry out the mandates of Ohio law in a manner consistent with prudent and sound insurance practice.

"On information and belief, contrary to such duty, [appellee] * * * ignored, or either (i) deliberately refused or (ii) negligently failed to assess correctly, certain financial and actuarial analyses which demonstrated conclusively in accordance with industry custom and practice that the PIE/[The Doctors' Company] transaction satisfied all applicable actuarial and financial tests and would have benefited PIE's insureds, creditors and the public, the constituencies who[se] interests [appellee] and its officials and employees were charged by Ohio law to protect.

"On information and belief, [appellee] * * * (i) ignored, (ii) improperly refused to credit, or (iii) negligently failed to credit certain asset/liability run-off analyses, calculations and indemnity reserve projections prepared by respected, independent professionals. On information and belief, these analyses and projections, completed before [appellee] sought the Rehabilitation Order on December 10, 1997, concluded that PIE had sufficient assets to permit [The Doctors' Company] transaction to proceed and to retire all outstanding liabilities against PIE and its insureds in an orderly manner.

"From the information available to them prior to seeking the Rehabilitation Order on December 10, 1997, [appellee] * * * knew or reasonably should have known that the PIE/[The Doctors' Company] transaction, as structured in the Agreement, satisfied all applicable actuarial, financial and regulatory standards and was in the best interests of PIE's insureds, creditors and the public.

"Notwithstanding the foregoing data supporting (indeed compelling) approval of the PIE/[The Doctors' Company] transaction, [appellee] * * * knew or reasonably should have known that a Rehabilitation Order would drive the insureds (the principal asset [The Doctors' Company] was purchasing) to seek alternative sources of insurance, thus effectively killing [The Doctors' Company] transaction. In contravention of the best interests of PIE's insureds, creditors and the public, [appellee] proceeded to seek and obtain the Rehabilitation Order entered on December 15, 1997. [Appellee] * * * took additional action that caused or contributed to the migration of PIE's insureds to other insurers, thus guaranteeing that [The Doctors' Company] transaction could never be effectuated."

Appellant claimed that appellee was "negligent in fulfilling and discharging their duties under Ohio law," which "caused substantial injury to PIE's insureds in an aggregate amount in excess of Twenty-five Thousand Dollars ($25,000.00) to be proven at trial." Appellant also requested that his claim should be made into a class action lawsuit stating that "[w]hile the exact number and identities of all class members are unknown to [appellant] at the present time, that information is identifiable and will be ascertained through appropriate class discovery."

On May 18, 1998, appellee filed a motion to dismiss appellant's complaint, arguing that appellant "has failed to state a claim upon which relief can be granted under the Public Duty Doctrine." Appellant filed an amended complaint on August 3, 1998. On August 19, 1998, appellee filed a motion to dismiss appellant's amended complaint "on the same basis and for the same reasons set forth in [appellant's] original Motion and supplemental Motion to Dismiss [appellant's] original Complaint." On October 22, 1998, the trial court denied appellee's motion to dismiss.

On June 26, 2000, appellee filed a motion for reconsideration and a motion for summary judgment. Appellee argued that appellant could not show that a

special duty was created for him by R.C. 3903.02(D) and that under the special-duty exception to the public duty doctrine, "there is no evidence that [appellee] during supervision assumed any affirmative duty on behalf of [appellant] as an individual." Appellee further argued that "there is no evidence that [appellee's] actions *did* harm policyholders, let alone prove the existence of any awareness by [appellee] of the probability that they could harm them." (Emphasis *sic.*)

In response to appellee's motion for reconsideration and summary judgment, appellant filed a reply memorandum opposing appellee's motions. Appellant stated that the court should deny appellee's motion for reconsideration "because the Court's October 1998 ruling was correct and because, on the face of the Amended Complaint and in accordance with valid and controlling Ohio law, [appellant] and the plaintiff class have stated valid claims against [appellee] upon which relief may be granted and which should not be dismissed on motion." Appellee responded by filing its own memorandum in support of its motions, arguing that appellant had not met his duty pursuant to Civ.R. 56(E) and "could not rest on his pleadings and survive summary judgment."

On August 31, 2000, the trial court denied appellee's motion for reconsideration. The court also stated that it "hereby deems [appellee's] June 26, 2000 filing a motion for summary judgment pursuant to Civ.R. 56." The court scheduled a non-oral hearing on the motion and stated that the motion "will be considered on the documents, without presence of counsel or parties, pursuant to Civ.R. 56 and [Loc.R. 4(C) of the Ohio Court of Claims]." The court further stated that in accordance with Civ.R. 56(C), "the parties may file additional affidavits, memoranda and other allowable evidence on or before *September 28, 2000.*" (Emphasis *sic.*)

On October 13, 2000, the trial court granted summary judgment in favor of appellee. In its entry, the court stated that it "granted the parties leave to file additional affidavits, memoranda, and other allowable evidence on or before September 28, 2000. To date, neither party has filed additional evidence." Appellant appeals this decision and presents the following assignment of error:

"The Court of Claims erred in granting summary judgment in favor of the Ohio Department of Insurance ('ODI') (R. 57) when the facts established for summary judgment purposes that ODI employees were negligent in the performance of their statutory duties in regulating the P.I.E. Mutual Insurance Company ('P.I.E.') prior to the rehabilitation order on December 15, 1997, and when the General Assembly expressly created a special relationship between ODI and P.I.E.'s insureds sufficient to impose a 'special duty' on ODI, the breach of which constitutes actionable negligence."

Appellant argues in his sole assignment of error that the trial court erred when it granted summary judgment in favor of appellee because the evidence estab-

lished that appellee's employees were negligent in the performance of their statutory duties. Appellant also argues that the General Assembly expressly created a special relationship between appellee and PIE's insureds sufficient to impose a special duty on appellee.

Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 203–204; *Dillion v. Univ. Optical* (May 3, 2001), Franklin App. No. 00AP–1055, unreported, 2001 WL 460877.

Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1131–1132. "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.* (1998), 82 Ohio St.3d 482, 485, 696 N.E.2d 1044, 1046. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Baker v. The Buschman Co.* (1998), 127 Ohio App.3d 561, 566, 713 N.E.2d 487, 490.

The initial burden lies with the movant to inform the trial court of the basis for the summary judgment motion and to identify those portions of the record that demonstrate the absence of a genuine material fact on the essential element(s) of the nonmoving party's claims. *CSS Publishing Co., Inc. v. Am. Economy Ins. Co.* (2000), 138 Ohio App.3d 76, 82, 740 N.E.2d 341, 345, following *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden. *Dresher* at 293, 662 N.E.2d at 273–274. When "a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

In the present case, appellant did not present any evidence in his memorandum opposing appellee's motion for summary judgment. Therefore, pursuant to Civ.R. 56(E), if an examination of appellee's motion demonstrates that appellee satisfied its initial burden showing that there was an absence of a genuine

material fact on the essential elements of appellant's claims, we must find that the trial court did not err when it granted summary judgment in favor of appellee.[1]

"It is well established that the government is not amenable to suit by a private individual for a breach of a public duty." *Ashland Cty. Bd. of Commrs. v. Ohio Dept. of Taxation* (1992), 63 Ohio St.3d 648, 654, 590 N.E.2d 730, 735, following *Anderson v. Ohio Dept. of Ins.* (1991), 58 Ohio St.3d 215, 569 N.E.2d 1042; *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 534 N.E.2d 835; and *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468.

"This court has regularly found that statutory duties imposed upon state officials to regulate, inspect, license, or audit are 'public' duties. As such, they do not flow to any private individual, including the individual being regulated, inspected, licensed or audited, and including any individuals who would benefit from these governmental functions. Public duties will not form the basis for liability to any such individuals in the absence of a special relationship." *Ashland, supra,* at 654, 590 N.E.2d at 735.

A special duty is shown if (1) the government entity assumed an affirmative duty to act on behalf of the injured party through either words or promises, (2) the governmental agents possessed knowledge that inaction could lead to harm, (3) there was some form of direct contact between the agents and the injured party, and (4) the injured party justifiably relied upon the government entity's affirmative undertaking. *Franklin v. Columbus* (1998), 130 Ohio App.3d 53, 58, 719 N.E.2d 592, 595–596.[2] A plaintiff who establishes a special duty not only avoids the operation of the public duty rule but also automatically establishes the duty element of a negligence action. *Id.*

To protect the interests of policyholders, creditors, claimants, and the public, generally, the Superintendent of Insurance has the authority to issue an order placing an insurer under supervision pursuant to R.C. 3903.09. *Fabe v.*

---

1. We note that we do not accept appellant's argument in his appellate brief that the "Court should accept the facts and allegations as set forth in the Amended Complaint as true for purposes of this appeal, together with all reasonable inferences from such factual allegations, because summary judgment is appropriate only if there are no genuine issues regarding material facts." Civ.R. 56(E) clearly states "an adverse party may not rest upon the mere allegations or denials of the party's pleadings."

2. We note that in *Franklin, supra,* at 59, 719 N.E.2d at 596, we found that the passage of the Ohio Political Subdivision Tort Liability Act "abrogated the common-law public duty rule and its corresponding special duty exception in the context of political subdivision liability." The public duty rule is still valid in the present case because the Ohio Political Subdivision Act applies to political subdivisions and appellee is not a political subdivision. See R.C. 2743.01(A) (" 'State' means the state of Ohio, including * * * all departments * * * of the state of Ohio. 'State' does not include political subdivisions.")

*Prompt Finance, Inc.* (1994), 69 Ohio St.3d 268, 631 N.E.2d 614, paragraph one of the syllabus. The Superintendent of Insurance may, under certain circumstances, file a complaint in the court of common pleas for an order authorizing the rehabilitation of an insurance company. *Id.* at 273, 631 N.E.2d at 618; R.C. 3903.09(D). Concerning whether R.C. Chapter 3903 creates a special duty between the state and private individuals, R.C. 3903.02(D) states: "The purpose of sections 3903.01 to 3903.59 of the Revised Code is the protection of the interests of insureds, claimants, creditors, and the public generally * * *." See, also, *State ex rel. Watkins v. Eighth Dist. Court of Appeals* (1998), 82 Ohio St.3d 532, 536, 696 N.E.2d 1079, 1083, fn. 2. Concerning this duty toward insureds, claimants, creditors, and the public, generally, the Ohio Supreme Court has stated:

"The statutory scheme for the regulation and liquidation of HMOs [health maintenance organizations] is designed to protect the interests of the public from the difficulties experienced by the company, not to protect the company and its shareholders. * * * [T]he statute was neither designed nor intended to create a special duty to a private individual to use as the basis for a claim of damages. R.C. Chapter 3903 was enacted for the benefit of the general citizenry and does not provide for a special relationship between the state and a liquidated HMO." *Anderson, supra,* at 219, 569 N.E.2d at 1045.

In *OHA: Assn. for Hospitals & Health Sys. v. Ohio Dept. of Human Serv.* (Dec. 19, 2000), Franklin App. No. 99AP–614, unreported, 2000 WL 1855077, we followed this holding, finding that pursuant to R.C. 3903.09(D), plaintiffs had "failed to establish the existence of a special duty owed to them by [Ohio Department of Human Services and Ohio Department of Insurance] in carrying out their lawfully imposed duties to monitor [managed care plans and], plaintiffs' claims against ODHS and ODI are barred by the public duty rule," pursuant to R.C. Chapter 3903. Therefore, we find that appellant cannot rely upon R.C. Chapter 3903 to assert that it creates a special duty between the state and appellant.

Appellee also submitted evidence regarding whether a special duty was created by appellee's having had direct contact with appellant. David S. Meyer, assistant director for appellee from January 1996 until January 1999, stated in an affidavit: "To my knowledge and belief, no actions were taken by [appellee], its employees or officials to inform [appellant], anyone on his behalf, or any other policyholder, of the Order or Supervision or any action taken by [appellee] thereunder." Meyer further stated:

"To my knowledge and belief, no contact or communication occurred between [appellee], its officials or employees and [appellant], or anyone on his behalf.

Furthermore, I am aware of no promises made to [appellant], or actions taken on his behalf, by [appellee], its employees or officials."

A review of the materials presented by appellee in its motion for summary judgment, including the transcript and other records of the proceedings involving appellee's actions in relation to PIE, fail to show any evidence that appellant had any direct contact with appellee during the time of the alleged injury. In fact, a review of the complete record fails to show any direct contact between appellant and appellee during the time appellee supervised PIE and sought an order of rehabilitation for PIE pursuant to R.C. 3903.12.

Based upon the fact that R.C. Chapter 3903 does not create a special duty between appellee and appellant, and the evidence showing that no direct contact occurred between appellant and appellee during the time of the alleged injury, we find that the trial court did not err when it sustained appellee's motion for summary judgment. Appellant failed to present sufficient evidence to demonstrate that appellee owed a special duty to him and could therefore be liable to him. Additionally, a review of the record fails to show any evidence that appellee's actions caused appellant to suffer any damages. Therefore, appellant's assignment of error is overruled, and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

LAZARUS and BOWMAN, JJ., concur.