DECISION
Capital Leasing of Ohio, Inc., defendant-appellant, appeals a decision of the Franklin County Court of Common Pleas granting a motion for summary judgment in favor of plaintiff-appellee, Columbus Municipal Airport Authority.
On April 9, 1997, appellee filed a complaint with the trial court for declaratory and injunctive relief. The complaint also included a request for monetary damages. In the complaint, appellee stated that on or about September 11, 1987, an agreement was reached between the city of Columbus and appellant for "the non-exclusive right to operate and maintain what is known as an Automobile Rental Concession" at Port Columbus International Airport ("Port Columbus") in Columbus, Ohio. The term of the 1987 agreement was for five years, which was renewed by a second agreement on April 15, 1993. The "automobile rental concession" being operated by appellant at Port Columbus was for Budget Rent-A-Car, a national car rental agency.
According to appellee's complaint, both the 1987 and 1993 agreements required appellant to pay appellee a percentage of gross revenues as a concession fee in exchange for being allowed to operate a rental car counter in the airport terminal. Appellee claims in 1996, an audit of appellant's records showed that for a three-year period beginning April 1, 1993 and ending March 31, 1996, appellee "discovered that [appellant] had systematically omitted from its reports, and failed to pay commissions upon a significant portion of its revenues." The discrepancy occurred in part because appellant failed to include all gross revenues generated from its Stelzer Road car rental facility. Even though appellant operated a customer service counter inside the airport terminal, appellant's customers required transportation to the Stelzer Road facility in order to obtain their rental automobiles. The Stelzer Road facility was near the airport but was not located on the airport's property.
Appellee alleges appellant breached both agreements because appellant "underreported gross revenues." Appellee requested the court: (1) declare the agreements require appellant to pay concession commissions from all gross revenues "regardless of whether the customers who generate such revenues physically transact business at [appellant's] counter inside the Airport terminal or at its service facility on Stelzer Road"; (2) grant a permanent injunction enjoining appellant from withholding any of the concession commissions computed to appellee pursuant to the 1993 agreement; (3) award damages for the breach of contract with prejudgment interest; and (4) award appellee costs in connection with the matter including reasonable attorney fees.
On February 13, 1998, appellant filed a motion for partial summary judgment claiming that both the 1987 and 1993 agreements were clear and unambiguous. Appellant claims a review of the agreements shows "rental transactions which originate at [appellant's] facility on Stelzer Road in Columbus, Ohio and which do not involve air travel do not have to be included in the `Gross Revenues' which [appellant] reports to [appellee] and on which it pays a concession commission." On March 26, 1998, appellee filed a motion for partial summary judgment arguing the 1987 and 1993 agreements "are not ambiguous" and that appellant had failed to pay the proper amount of concessions required by those agreements.
On October 20, 1998, the trial court denied appellant's motion for partial summary judgment and granted appellee's motion for partial summary judgment. The court held "as a matter of law that the North Stelzer service facility is part of [appellant's] Airport operations under both the 1987 and 1993 concession agreements, and that [appellant] is required to pay commissions on all rental contracts executed at this location." On December 27, 2000, the court determined the amount of unpaid commissions payable under the 1987 agreement was $1,208,786.42 and $1,896,000.01 under the 1993 agreement. On January 17, 2001, the trial court filed a judgment entry incorporating the previous entries holding that appellant was liable to appellee for $3,104,786.43 plus prejudgment interest in the amount of $3,502,135.17. Appellant appeals this decision, and presents the following three assignments of error:
 I. The trial court erred in granting summary judgment for appellee as to the meaning of the payment provisions of two Airport Automobile Rental Concession Agreements where the operative language in both Agreements did not support summary judgment for appellee, where there was conflicting parol evidence as to the meaning of that language, and where the trial court selected some parol evidence, construed it improperly in favor of the movant-appellee, while failing to construe in favor of appellant (the non-movant) other parol evidence that strongly supported appellant.
 II. The trial court erred in granting summary judgment for appellee in finding as a matter of law that the payments appellant was required to make under the two Airport Rental Car Concession Agreements did not constitute an unreasonable tax, in violation of the Constitution of the State of Ohio.
 III. The trial court erred in the amount of its award of prejudgment interest in favor of appellee.
Appellant argues in its first assignment of error the trial court erred when it granted partial summary judgment in favor of appellee. Appellant contends the operative language of both agreements does not support the trial court's determination that appellant is obligated to pay a percentage of all gross revenues generated by the Stelzer Road location.
Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370; Antenori v. Ohio Dept. of Rehab. Corr. (Dec. 18, 2001), Franklin App. No. 01AP-688, unreported.
Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346. "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485. When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court. Markowitz v. Ohio Dept. of Ins. (2001),144 Ohio App.3d 155, 160.
A contract is a promise or a set of promises for breach of which the law provides a remedy, or the performance of which the law in some way recognizes a duty. Matusoff v. Kuhlman (Sept. 28, 1999), Franklin App. No. 98AP-1405, unreported, following Cleveland Builders Supply Co. v. Farmers Ins. Group of Cos. (1995), 102 Ohio App.3d 708, 712. Parties to a contract in a commercial setting should be free to enter into whatever type of relationship they desire. Gunsorek v. Pingue (1999),135 Ohio App.3d 695, 701. "The interpretation of a contract that is clear and unambiguous is a question of law, and no issue of fact exists to be determined." Gray-Jones v. Jones (2000), 137 Ohio App.3d 93,104. "However, if the contract is ambiguous, ascertaining the parties' intent constitutes a question of fact." Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC (2000), 138 Ohio App.3d 57, 74.
In the present case, the parties disagree concerning the proper interpretation of both agreements. The trial court agreed with appellee's interpretation of the agreements and granted partial summary judgment in favor of appellee based upon that interpretation. We will examine both agreements and determine whether the interpretation of them "is clear and unambiguous."
The parties entered into the 1987 agreement on September 11, 1987. The signed agreement included a provision which required the terms and conditions included in the "Specifications * * * for Automobile Rental Concession at the Port Columbus International Airport" to have "the same binding force as if written herein." The "Specifications for Automobile Rental Concession at Port Columbus International Airport" was a portion of a document used by rental car companies when they placed bids with appellee for a concession agreement.
Article II of the "Specifications for Automobile Rental Concession at Port Columbus International Airport" states:
 The Concessionaire is at all times and at his own cost and expense to furnish and to make available a sufficient number of late model passenger automobiles and trucks to adequately care for the normal demand at Port Columbus International Airport, Columbus, Ohio. Automobiles shall be in good operation and free from known mechanical defect and shall be kept clean, neat and attractive, inside and out. Concessionaire agrees it will at no time use automobiles whose year model is more than two (2) years older than the current calendar year model.
Article III states that the concession fee shall be the greater amount of either the amount bid by the concessionaire or a given percentage of "gross revenue" for a given year. Article III further states that the term "gross revenue" shall "include all time and mileage revenues derived by the rental agency from the operation of all services performed under this Agreement."
It is apparent from these sections that appellant was required to pay a concession fee based upon its obligation to provide vehicles "to adequately care for the normal demand" at Port Columbus. However, the contract does not specify how gross revenue is to be determined if appellant's business activities at a given facility involved activities unrelated to appellant's obligation. A review of the contract also shows it contemplates appellant's use of facilities not located on the airport's property. For example, Article V states the concessionaire "shall be required to provide shuttle bus service for their customers between the Terminal and their Automobile Servicing Facility." The concessionaire is not required to have the automobile servicing facility on the airport's property because Article VI states that a concessionaire "may enter into a separate agreement for ground space required for the construction by Concessionaire at his own expense of an Automobile Rental and Service Facility on the premises * * *" of the airport.
A review of the complete 1987 agreement shows there is no requirement that the operations of the automobile servicing facility be exclusively dedicated to fulfilling the concessionaire's obligations to appellee. Therefore, it is possible that a facility, similar to the Stelzer Road facility, could be operated by a concessionaire without having all business activities dedicated to fulfilling the obligation to provide vehicles "to adequately care for the normal demand" at Port Columbus. Accordingly, after reviewing the complete agreement, we find it is unclear whether the parties intended to have a concession fee apply to all gross revenues generated by a facility similar to the Stelzer Road facility.
The 1993 agreement is different than the 1987 agreement in that it is an agreement entered into between the parties which does not incorporate provisions from a concession bid document. The 1993 agreement specifies an annual minimum guaranteed amount to be paid by appellant to appellee "for the use of the Airport" or "ten (10) percent of gross annual revenues, whichever is greater." "Gross revenues" is defined to mean "the total amount accruing to [appellant] by credit of services, materials or other merchandising, or from monies received or retained in fees and commissions by [appellant] from its operations originating or concluding at the Airport." A reasonable interpretation of the contract could include a determination that the commission fee would not include gross revenues from operations not originating or concluding at the airport.
After having reviewed both agreements, we find the provisions dealing with the determination of commission fees based upon gross revenues is not "clear and unambiguous." A review of the evidence in the record presented by both parties shows that a question of fact exists concerning the intent of the parties when they entered into the 1987 and 1993 agreements concerning the definition of gross revenues. Appellant believes gross revenues include only revenues related to its obligation to provide vehicles to the airport under the 1987 agreement, and/or revenues generated from its operations "originating or concluding at the Airport." Appellee believes gross revenues include all revenues generated by the Stelzer Road facility.
Since both agreements are not "clear and unambiguous" and a review of the record shows that a question of fact exists concerning the intent of the parties entering into the agreements, we find the trial court erred when it granted partial summary judgment in favor of appellee concerning this issue. Appellant's first assignment of error is sustained.
Because of our disposition of the present case based upon the issues raised in appellant's first assignment of error, we need not address the issues raised in appellant's second and third assignments of error. See App.R. 12(A)(1)(c).[1] Accordingly, we reverse the judgment of the Franklin County Court of Common Pleas and remand the matter to that court for further proceedings pursuant to App.R. 12(D).
Judgment reversed and case remanded.
DESHLER, J., concurs.
BRYANT, J., concurs separately.
[1] Since this court reversed the judgment and remanded the matter to the trial court, that court again has jurisdiction to address appellant's arguments raised in its second and third assignments of error. Therefore, it would be premature for this court to address interlocutory issues that could still be addressed and determined by the trial court.