OPINION
{¶ 1} Plaintiffs-appellants, Christopher and Yvonne Walker, appeal the decision of the Clermont County Court of Common Pleas granting the summary judgment motion of defendant-appellee, West American Insurance Company. We affirm the common pleas court's decision.
 {¶ 2} In appellants' sole assignment of error, they argue that the common pleas court erred in granting West American's summary judgment motion. Appellants argue that there is a genuine issue of fact as to whether their homeowner's policy with West American covers damage to their basement resulting from water intrusion.
 {¶ 3} Summary judgment is proper where (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only come to a conclusion adverse to the party against whom the motion is made, construing the evidence most strongly in that party's favor. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. We review the granting of a summary judgment motion de novo. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296.
 {¶ 4} It is well settled that insurance policies are contracts to which the general rules of contract construction apply. Gomolka v. State Auto Mut. Ins. Co. (1982),70 Ohio St.2d 166, 167. In interpreting an insurance policy, we must give the policy's language its plain and ordinary meaning. WestfieldIns. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. If the policy's terms are clear and unambiguous, the interpretation of the policy is a matter of law. CSS PublishingCo., Inc. v. Am. Economy Ins. Co. (2000), 138 Ohio App.3d 76,84. When interpreting an insurance policy, we must liberally construe the policy's language in favor of the policyholder. Galatis at ¶ 35.
 {¶ 5} Appellants sustained damage to their dwelling as well as to their personal property due to the water intrusion. With respect to the dwelling, the policy at issue states that it does not insure against risk of loss caused by a "latent defect." The policy does not define "latent defect." Webster's Third New International Dictionary defines the adjective, "latent" as follows: "existing in hidden, dormant, or repressed form, but usually capable of being evoked, expressed, or brought to light; existing in posse; not manifest; potential." Webster's Third New International Dictionary (1993) 1275.
 {¶ 6} The report of appellants' expert, an architect, stated that the water intrusion was caused by "the geometry of the roof and gutter system." According to the expert, "[t]he vector of the roof valleys directs roof run off along the main A-frame gutters where there is no down spout outlet." The expert stated in his report that during "very heavy rain events," water over-flowed from the gutters onto the ground and eventually into the basement through a window well. Appellants did not hire anyone to independently inspect the house prior to taking occupancy. However, appellant, Christopher Walker, stated in an affidavit contained in the record that the house "did not have any visible defects" when he purchased it.
 {¶ 7} Based on the above facts and our review of the entire record, we find no error in the common pleas court's determination that the defect in the "geometry of the roof and gutter system" was a "latent defect," and that it caused the water intrusion and subsequent damage. Consistent with the ordinary meaning of "latent," the defect in the roof and gutter system "existed in hidden form" and was "not manifest" at the time appellants purchased the property and entered into the contract with West American. Based on the report of appellants' expert, the defect caused the water intrusion and subsequent damage. Therefore, the damage to appellants' dwelling was not covered by the policy.
 {¶ 8} With respect to personal property, the policy states that it does not cover loss directly or indirectly caused by "water damage." The policy defines "water damage" as "[f]lood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind." The word, "flood" is not defined in the policy. Webster's Third New International Dictionary gives several definitions for "flood" including: (1) "a rising and overflowing of a body of water that covers land not usually underwater; deluge; freshet;" (2) "a great downpour;" (3) "a great stream of something that flows in a steady course;" (4) "a large quantity widely diffused; superabundance." Webster's Third New International Dictionary (1993) 873.
 {¶ 9} We find no error in the common pleas court's determination that "water damage," specifically "flood," caused the damage to appellants' basement. The fact that the policy included both "flood" and "overflow of a body of water" as meanings for "water damage" is an indication that the policy intended "flood" not to mean strictly an overflow of a body of water, but also to have a broader meaning such as a "great stream of something flowing in a steady course," or "a large quantity widely diffused." We find it noteworthy that appellant, Yvonne Walker, in her deposition testimony, described the water intrusion as "flooding." She stated: "[W]e had flooding in our basement every year whenever there was hard torrential rain." She also stated that the "water came through that window like Niagara Falls."
 {¶ 10} Additionally, we find that the water intrusion and subsequent damage was caused by "surface water" within the meaning of the policy. Based on the undisputed facts in the record, water flowed from the surface of the ground to the window well, and then into the basement. While "surface water" is not defined in the policy, such a result is consistent with the ordinary meaning of the words.
 {¶ 11} After thoroughly reviewing the record, we find no error in the common pleas court's decision granting West American's summary judgment motion. The policy excluded coverage for damage to the dwelling caused by a "latent defect." The policy excluded coverage for damage to personal property caused by "flood" or "surface water." The undisputed facts dictate that those exclusions apply. Accordingly, we overrule appellants' sole assignment of error.
 {¶ 12} Based on our resolution of appellants' assignment of error, we find appellee's cross-assignment of error to be moot. See App.R. 12(A)(1)(c).
 {¶ 13} Judgment affirmed.
Walsh and Young, JJ., concur.